APPEAL,CLOSED,JURY,TYPE–H

# U.S. District Court
# District of Columbia (Washington, DC)
# CIVIL DOCKET FOR CASE #: <u>1:18–cv–03075–JEB</u>
## *Internal Use Only*

| | |
|---|---|
| LEACH v. MNUCHIN | Date Filed: 12/21/2018 |
| Assigned to: Chief Judge James E. Boasberg | Date Terminated: 03/14/2023 |
| Demand: $300,000 | Jury Demand: Plaintiff |
| Cause: 42:2000e Job Discrimination (Employment) | Nature of Suit: 442 Civil Rights: Jobs |
| | Jurisdiction: U.S. Government Defendant |

**<u>Plaintiff</u>**

**LESTER A. LEACH**       represented by    **Charlene Bofinger**
SELDON BOFINGER & ASSOCIATES, P.C.
1319 F ST NW
Washington, DC 20004
202–393–8200
Email: cb@sba–pc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Robert C. Seldon**
SELDON BOFINGER & ASSOCIATES, P.C.
1319 F Street, NW
Suite 200
Washington, DC 20004
(202) 393–8200
Fax: (202) 318–2287
Email: rcs@sba–pc.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Angela Kristin St. Pierre**
SELDON BOFINGER & ASSOCIATES, P.C.
1319 F Street NW
Suite 200
Washington, DC 20004
202–393–8200
Email: asp@sba–pc.com
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Molly E. Buie**
SELDON BOFINGER & ASSOCIATES, P.C.
1319 F Street, NW

Suite 200
Washington, DC 20004
(202) 393–8200
Fax: (202) 318–2287
Email: meb@sba–pc.com
*TERMINATED: 06/29/2022*

V.

**Defendant**

**STEVEN T. MNUCHIN**                    represented by   **Jeremy S. Simon**
*Secretary of the Treasury*                               DOJ–USAO
                                                          Patrick Henry Building
                                                          601 D. Street, N.W.
                                                          Washington, DC 20530
                                                          (202) 252–2528
                                                          Email: jeremy.simon@usdoj.gov
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

                                                          **Ralph Carmen Conte**
                                                          UNITED STATES MINT
                                                          General Law, Ethics and Regulation
                                                          801 9th Street N.W.
                                                          Ste 8s–05
                                                          Washington, DC 20220
                                                          202–354–7617
                                                          Email: ralph.conte@usmint.treas.gov
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 12/21/2018 | 1 | COMPLAINT against STEVEN T. MNUCHIN with Jury Demand ( Filing fee $ 400 receipt number 0090–5854866) filed by Lester A Leach. (Attachments: # 1 Civil Cover Sheet, # 2 Summons Attorney General, # 3 Summons Dept. Treasury, # 4 Summons USAO)(Buie, Molly) (Entered: 12/21/2018) |
| 12/26/2018 | | Case Assigned to Judge James E. Boasberg. (zef, ) (Entered: 12/26/2018) |
| 12/26/2018 | 2 | SUMMONS (3) Issued Electronically as to STEVEN MNUCHIN, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(zef, ) (Entered: 12/26/2018) |
| 01/10/2019 | 3 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 1/4/2019. Answer due for ALL FEDERAL DEFENDANTS by 3/5/2019. (Seldon, Robert) (Entered: 01/10/2019) |
| 01/14/2019 | 4 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 1/11/2019. (Seldon, Robert) (Entered: 01/14/2019) |

| 01/14/2019 | 5 | AMENDED COMPLAINT against STEVEN MNUCHIN with Jury Demand filed by LESTER A. LEACH. (Attachments: # 1 Exhibit Amended Complaint)(Seldon, Robert) (Entered: 01/14/2019) |
| --- | --- | --- |
| 02/21/2019 | 6 | NOTICE *Receipt of Svc by Dept. of Treasury* by LESTER A. LEACH re 1 Complaint, (Attachments: # 1 Exhibit Att. A –– Receipt of transmittal of mail svc Treasury, # 2 Exhibit Att. B –– Proof of receipt of svc Treasury)(Seldon, Robert) (Entered: 02/21/2019) |
| 02/28/2019 | 7 | Consent MOTION for Extension of Time to *Answer or Otherwise Respond to Amended Complaint* by STEVEN MNUCHIN (Attachments: # 1 Proposed Order)(Simon, Jeremy) (Entered: 02/28/2019) |
| 02/28/2019 | | MINUTE ORDER GRANTING Consent 7 Motion for Extension of Time. The Court ORDERS that Defendant shall respond to the Amended Complaint by March 28, 2019. So ORDERED by Judge James E. Boasberg on 2/28/2019. (lcjeb1) (Entered: 02/28/2019) |
| 02/28/2019 | | Set/Reset Deadlines: Responses due by 3/28/2019. (znbn) (Entered: 02/28/2019) |
| 03/28/2019 | 8 | ANSWER to 5 Amended Complaint by STEVEN MNUCHIN.(Simon, Jeremy) (Entered: 03/28/2019) |
| 03/28/2019 | | MINUTE ORDER: An Initial Scheduling Conference is set for April 23, 2019, at 10:00 a.m. in Courtroom 25. The parties shall meet, confer, and submit a joint report pursuant to FRCP 26(f) and Local Rule 16.3. So ORDERED by Judge James E. Boasberg on 3/28/2019. (lcjeb1) (Entered: 03/28/2019) |
| 03/28/2019 | | Set/Reset Hearings: Initial Scheduling Conference set for 4/23/2019 at 10:00 AM in Courtroom 25A before Judge James E. Boasberg. (lsj) (Entered: 03/28/2019) |
| 04/16/2019 | 9 | MEET AND CONFER STATEMENT. (Simon, Jeremy) (Entered: 04/16/2019) |
| 04/23/2019 | | Minute Entry for proceedings held before Judge James E. Boasberg: Initial Scheduling Conference held on 4/23/2019. Scheduling Order forthcoming. Status Conference set for 12/19/2019 at 10:00 AM in Courtroom 25A before Judge James E. Boasberg. (Court Reporter Scott Wallace ) (znbn) (Entered: 04/23/2019) |
| 04/23/2019 | 10 | SCHEDULING ORDER: The Court ORDERS that: (1) Rule 26(a)(1)(A) Initial Disclosures shall be due May 22, 2019; (2) Discovery shall commence on June 13, 2019; (3) The deadline to move for leave to amend pleadings or join other parties shall be June 20, 2019; (4) The deadline for proponent's Rule 26(a)(2)(A–B) Disclosures shall be September 5, 2019; (5) The deadline for opponent's Rule 26(a)(2)(A–B) Disclosures shall be October 17, 2019; and (6) Discovery shall close on December 17, 2019. A status hearing is scheduled for December 19, 2019, at 10:00 a.m. in Courtroom 25. So ORDERED by Judge James E. Boasberg on 4/23/2019. (lcjeb1) (Entered: 04/23/2019) |
| 04/23/2019 | | Set/Reset Deadlines/Hearings: Amended Pleadings due by 6/20/2019. Discovery due by 6/13/2019. Initial Disclosure due by 5/22/2019. Plaintiff Rule 26(a)(2) due by 9/5/2019. Defendant Rule 26(a)(2) due by 10/17/2019. Discovery to close on 12/17/2019. Status Conference set for 12/19/2019 at 10:00 AM in Courtroom 25A before Judge James E. Boasberg. (znbn) (Entered: 04/24/2019) |
| 12/02/2019 | 11 | STIPULATION *(Stipulated Protective Order)* by STEVEN T. MNUCHIN. (Simon, Jeremy) (Entered: 12/02/2019) |

| 12/03/2019 | 12 | STIPULATED PROTECTIVE ORDER setting forth procedures for handling personnel, medical, and other records and information likely to contain information protected by the Privacy Act of 1974 and the Health Insurance Portability and Protection Act. Signed by Judge James E. Boasberg on 12/3/2019. (lcjeb1) (Entered: 12/03/2019) |
|---|---|---|
| 12/06/2019 | 13 | Joint MOTION for Extension of Time to Complete Discovery *and to Continue December 19, 2019 Post–Discovery Conference* by STEVEN T. MNUCHIN (Attachments: # 1 Proposed Order)(Simon, Jeremy) (Entered: 12/06/2019) |
| 12/06/2019 | | MINUTE ORDER: The Court GRANTS the parties' 13 Motion for Extension of Time to Complete Discovery. The Court further ORDERS that: 1) The deadline for the parties to complete discovery is April 16, 2020; and 2) The post–discovery status conference set for December 17, 2019 is VACATED and RESET for April 24, 2020 at 10 a.m. in Courtroom 25. So ORDERED by Judge James E. Boasberg on 12/6/2019. (lcjeb1) (Entered: 12/06/2019) |
| 12/06/2019 | | Set/Reset Deadlines/Hearings: Discovery due by 4/16/2020. Status Conference set for 4/24/2020 at 10:00 AM in Courtroom 25A before Judge James E. Boasberg. (znbn) (Entered: 12/09/2019) |
| 04/08/2020 | | MINUTE ORDER: The Court ORDERS that the Status Conference set for April 24, 2020, at 10:00 a.m. will occur telephonically. The parties shall participate by dialing into Chambers' toll–free conference–call number at this time. Chambers will contact the parties via email with call–in instructions. So ORDERED by Judge James E. Boasberg on 4/8/2020. (lcjeb1) (Entered: 04/08/2020) |
| 04/08/2020 | | Set/Reset Hearings: Telephone Conference set for 4/24/2020 at 10:00 AM in Chambers before Judge James E. Boasberg. (znbn) (Entered: 04/08/2020) |
| 04/14/2020 | 14 | Joint MOTION for Extension of Time to Complete Discovery by STEVEN T. MNUCHIN (Attachments: # 1 Proposed Order)(Simon, Jeremy) (Entered: 04/14/2020) |
| 04/14/2020 | | MINUTE ORDER: The Court GRANTS the parties' 14 Motion for Extension of Time to Complete Discovery. The Court further ORDERS that: 1) The deadline for the parties to complete discovery is July 31, 2020; and 2) The post–discovery status conference set for April 24, 2020 at 10 a.m. is VACATED and RESET for August 4, 2020 at 11:00 a.m. in Courtroom 25. So ORDERED by Judge James E. Boasberg on 4/14/2020. (lcjeb1) (Entered: 04/14/2020) |
| 04/14/2020 | | Set/Reset Deadlines/Hearings: Discovery due by 7/31/2020. Post Discovery Status Conference set for 8/4/2020 at 11:00 AM in Courtroom 25A before Judge James E. Boasberg. (nbn) (Entered: 04/14/2020) |
| 07/28/2020 | 15 | Joint MOTION to Modify Scheduling Order and Stay the Deadline for the Close of Discovery by STEVEN T. MNUCHIN (Attachments: # 1 Proposed Order)(Simon, Jeremy). Added MOTION to Stay on 7/28/2020 (znmw). (Entered: 07/28/2020) |
| 07/28/2020 | | MINUTE ORDER: The Court GRANTS the parties' 15 Motion to Modify Scheduling Order and Stay the Deadline for the Close of Discovery. The Court further ORDERS that: 1) The post–discovery status conference set for August 4, 2020, is VACATED; and 2) The parties shall file a joint status report by November 18, 2020. So ORDERED by Judge James E. Boasberg on 7/28/2020. (lcjeb1) (Entered: 07/28/2020) |
| 07/28/2020 | | Set/Reset Deadlines: Joint Status Report due by 11/18/2020. (znbn) (Entered: 07/28/2020) |

| 11/18/2020 | 16 | Joint STATUS REPORT by STEVEN T. MNUCHIN. (Simon, Jeremy) (Entered: 11/18/2020) |
|---|---|---|
| 11/18/2020 | | MINUTE ORDER: The Court ADOPTS the parties' 16 Joint Status Report and ORDERS that: 1) The deadline for the parties to complete discovery is April 14, 2021; and 2) The parties shall file a status report on April 1, 2021, setting forth their respective positions as to whether additional time is required to complete discovery. So ORDERED by Judge James E. Boasberg on 11/18/2020. (lcjeb1) (Entered: 11/18/2020) |
| 11/18/2020 | | Set/Reset Deadlines: Status Report due by 4/1/2021. Discovery due by 4/14/2021. (znbn) (Entered: 11/19/2020) |
| 04/01/2021 | 17 | Joint STATUS REPORT by STEVEN T. MNUCHIN. (Simon, Jeremy) (Entered: 04/01/2021) |
| 04/01/2021 | | MINUTE ORDER: The Court ADOPTS the parties' 17 Joint Status Report and ORDERS that: 1) The deadline for the parties to complete discovery is July 30, 2021; and 2) A post–discovery status conference is set for August 2, 2021, at 11:00 a.m. So ORDERED by Judge James E. Boasberg on 4/1/2021. (lcjeb1) (Entered: 04/01/2021) |
| 04/01/2021 | | Set/Reset Deadlines/Hearings: Discovery due by 7/30/2021. Status Conference set for 8/2/2021 at 11:00 AM in Telephonic/VTC before Judge James E. Boasberg. (nbn) (Entered: 04/01/2021) |
| 07/19/2021 | 18 | Joint MOTION for Extension of Time to Complete Discovery by STEVEN T. MNUCHIN. (Attachments: # 1 Proposed Order)(Simon, Jeremy). Added MOTION to Modify on 7/20/2021 (ztth). (Entered: 07/19/2021) |
| 07/19/2021 | | MINUTE ORDER: The Court GRANTS the parties' 18 Joint Motion to Modify Scheduling Order and Extend the Deadline for the Close of Discovery. The Court further ORDERS that: 1) The deadline for the parties to complete discovery is October 15, 2021; and 2) The post–discovery status conference set for August 2, 2021 is VACATED and RESET for October 22, 2021 at 2:00 pm. So ORDERED by Judge James E. Boasberg on 7/19/2021. (lcjeb2) (Entered: 07/19/2021) |
| 07/19/2021 | | Set/Reset Deadlines/Hearings: Discovery due by 10/15/2021. Status Conference set for 10/22/2021 at 02:00 PM in Telephonic/VTC before Judge James E. Boasberg. (znbn) (Entered: 07/19/2021) |
| 08/03/2021 | | MINUTE ORDER: The Court ORDERS that a status hearing is set for August 5, 2021, at 10:00 a.m. to discuss a discovery dispute. So ORDERED by Judge James E. Boasberg on 8/3/2021. (lcjeb3) (Entered: 08/03/2021) |
| 08/03/2021 | | Set/Reset Hearings: Status Conference set for 8/5/2021 at 10:00 AM in Telephonic/VTC before Judge James E. Boasberg. (znbn) (Entered: 08/04/2021) |
| 08/05/2021 | | MINUTE ORDER: As discussed in today's discovery call, the Court ORDERS that Plaintiff shall file his Motion to Compel based on a waiver of the attorney–client privilege by August 25, 2021, with Defendant's Opposition due by September 9, 2021, and Plaintiff's Reply due by September 16, 2021. So ORDERED by Judge James E. Boasberg on 8/5/2021. (lcjeb1) (Entered: 08/05/2021) |
| 08/05/2021 | | Minute Entry for proceedings held before Judge James E. Boasberg: Telephonic Status Conference held on 8/5/2021. Motion due by 8/25/2021. Responses due by 9/9/2021. Replies due by 9/16/2021. (Court Reporter Lisa Griffith) (znbn) (Entered: 08/06/2021) |

| 08/10/2021 | 19 | Consent MOTION Entry of Appearance of Special Assistant United States Attorney Ralph Conte As Co–Counsel for Defendant by STEVEN T. MNUCHIN. (Attachments: # 1 Proposed Order, # 2 Declaration of Ralph Conte, # 3 Notice of Appearance of Ralph C. Conte)(Simon, Jeremy) (Entered: 08/10/2021) |
| --- | --- | --- |
| 08/10/2021 | | MINUTE ORDER: The Court ORDERS that Defendant's Consent 19 Motion for Entry of Appearance is GRANTED. So ORDERED by Judge James E. Boasberg on 8/10/2021. (lcjeb3) (Entered: 08/10/2021) |
| 08/10/2021 | 20 | NOTICE of Appearance by Ralph Carmen Conte on behalf of STEVEN T. MNUCHIN (Attachment: # 1 Declaration) (ztth) (Entered: 08/17/2021) |
| 08/24/2021 | 21 | Consent MOTION for Extension of Time to *Brief Plaintiff's Motion to Compel* by LESTER A. LEACH. (Attachments: # 1 Text of Proposed Order Proposed Order)(Seldon, Robert) (Entered: 08/24/2021) |
| 08/24/2021 | | MINUTE ORDER GRANTING Consent 21 Motion for Extension of Time. The Court ORDERS that Plaintiff shall file his Motion to Compel by September 3, 2021, Defendant shall file its opposition by September 21, 2021, and Plaintiff shall file his reply by September 28, 2021. So ORDERED by Judge James E. Boasberg on 8/24/2021. (lcjeb1) (Entered: 08/24/2021) |
| 08/24/2021 | | Set/Reset Deadlines: Motion to Compel due by 9/3/2021. Responses due by 9/21/2021. Replies due by 9/28/2021. (znbn) (Entered: 08/26/2021) |
| 09/03/2021 | 22 | SEALED MOTION filed by LESTER A. LEACH (Attachments: # 1 Att. A, # 2 Att. B, # 3 Att. C, # 4 Att. D, # 5 Att. E, # 6 Att. F, # 7 Att. G, # 8 Att. H, # 9 Att. I, # 10 Att. J, # 11 Att. K)(Buie, Molly) (Entered: 09/03/2021) |
| 09/21/2021 | 23 | Consent MOTION for Extension of Time to *File Opposition to Motion to Compel Discovery* by STEVEN T. MNUCHIN. (Attachments: # 1 Proposed Order)(Simon, Jeremy) (Entered: 09/21/2021) |
| 09/21/2021 | | MINUTE ORDER GRANTING Consent 23 Motion for Extension of Time. The Court ORDERS that Defendant shall file its opposition by September 29, 2021, and Plaintiff shall file his reply by October 8, 2021. So ORDERED by Judge James E. Boasberg on 9/21/2021. (lcjeb1) (Entered: 09/21/2021) |
| 09/21/2021 | | Set/Reset Deadlines: Responses due by 9/29/2021. Replies due by 10/8/2021. (znbn) (Entered: 09/22/2021) |
| 09/29/2021 | 24 | Memorandum in opposition to re 22 SEALED MOTION filed by LESTER A. LEACH filed by STEVEN T. MNUCHIN. (Attachments: # 1 Proposed Order, # 2 Exhibits 1 to 5)(Simon, Jeremy) (Entered: 09/29/2021) |
| 10/06/2021 | 25 | Joint MOTION to Suspend Discovery Cut–Off Date by STEVEN T. MNUCHIN. (Attachments: # 1 Proposed Order)(Simon, Jeremy) (Entered: 10/06/2021) |
| 10/06/2021 | | MINUTE ORDER GRANTING 25 Joint Motion to Suspend Discovery Cut–Off Date. The Court ORDERS that: 1) The deadline for the parties to complete discovery is SUSPENDED until further order of the Court; 2) The post–discovery status conference set for October 22, 2021 is VACATED; and 3) The parties shall file a joint status report within seven days of a decision by the Court resolving the pending motion to compel. So ORDERED by Judge James E. Boasberg on 10/6/2021. (lcjeb1) (Entered: 10/06/2021) |

| 10/06/2021 | 26 | Consent MOTION for Extension of Time to File Response/Reply as to 22 SEALED MOTION filed by LESTER A. LEACH by LESTER A. LEACH. (Attachments: # 1 Text of Proposed Order)(Buie, Molly) (Entered: 10/06/2021) |
| 10/07/2021 | | MINUTE ORDER GRANTING Consent 26 Motion for Extension of Time. The Court ORDERS that Plaintiff shall file his Reply in support of his 22 Motion to Compel by October 18, 2021. So ORDERED by Judge James E. Boasberg on 10/7/2021. (lcjeb1) (Entered: 10/07/2021) |
| 10/07/2021 | | Set/Reset Deadlines: Replies due by 10/18/2021. (nbn) (Entered: 10/07/2021) |
| 10/15/2021 | 27 | Consent MOTION for Extension of Time to File Response/Reply as to 22 SEALED MOTION filed by LESTER A. LEACH by LESTER A. LEACH. (Attachments: # 1 Text of Proposed Order)(Buie, Molly) (Entered: 10/15/2021) |
| 10/15/2021 | | MINUTE ORDER GRANTING Consent 27 Motion for Extension of Time. The Court ORDERS that Plaintiff shall file his Reply in support of his 22 Motion to Compel by October 25, 2021. So ORDERED by Judge James E. Boasberg on 10/15/2021. (lcjeb1) (Entered: 10/15/2021) |
| 10/15/2021 | | Set/Reset Deadlines: Replies due by 10/25/2021. (znbn) (Entered: 10/15/2021) |
| 10/25/2021 | 28 | SEALED REPLY TO OPPOSITION filed by LESTER A. LEACH re 22 SEALED MOTION filed by LESTER A. LEACH (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Att. K, # 2 Att. L, # 3 Att. M, # 4 Att. N)(Buie, Molly) (Entered: 10/25/2021) |
| 10/28/2021 | | MINUTE ORDER: The Court ORDERS that the parties shall appear for a telephonic status hearing on Plaintiff's 22 Motion to Compel on November 3, 2021, at 11:30 a.m. In advance of the hearing, the parties shall discuss whether an acceptable resolution of the Motion would be permission for Plaintiff to depose Bailey and O'Connor about what Gentry said to them (if anything) about referring the matter to OIG, but forbidding a deposition of Gentry herself. If the parties reach agreement, they shall so inform the Court, which will then vacate the hearing. So ORDERED by Judge James E. Boasberg on 10/28/2021. (lcjeb1) (Entered: 10/28/2021) |
| 10/28/2021 | | Set/Reset Hearings: Status Conference set for 11/3/2021 at 11:30 AM in Telephonic/VTC before Judge James E. Boasberg. (znbn) (Entered: 10/28/2021) |
| 10/29/2021 | | MINUTE ORDER: Pursuant to a request from counsel, the Court ORDERS that the telephonic status hearing set for November 3, 2021, at 11:30 a.m. is VACATED and RESET for November 5, 2021, at 9:30 a.m. So ORDERED by Judge James E. Boasberg on 10/29/2021. (lcjeb3) (Entered: 10/29/2021) |
| 10/29/2021 | | Set/Reset Hearings: Status Conference set for 11/5/2021 at 09:30 AM in Telephonic/VTC before Judge James E. Boasberg. (znbn) (Entered: 10/29/2021) |
| 11/05/2021 | | Minute Entry for proceedings held before Judge James E. Boasberg: Status Conference held on 11/5/2021. Joint Status Report due by 11/9/2021. (Court Reporter Lisa Griffith) (nbn) (Entered: 11/05/2021) |
| 11/09/2021 | 29 | Joint STATUS REPORT by STEVEN T. MNUCHIN. (Simon, Jeremy) (Entered: 11/09/2021) |
| 11/09/2021 | | MINUTE ORDER: The Court ADOPTS the parties' 29 Joint Status Report and ORDERS that: 1) Plaintiff's 22 Sealed Motion to Compel is DENIED WITHOUT |

| | | |
|---|---|---|
| | | PREJUDICE; 2) Discovery shall now close on February 3, 2022; and 3) The parties shall appear for a post–discovery status on February 4, 2022, at 10:00 a.m. So ORDERED by Judge James E. Boasberg on 11/9/2021. (lcjeb1) (Entered: 11/09/2021) |
| 11/09/2021 | | Set/Reset Deadlines/Hearings: Discovery due by 2/3/2022. Status Conference set for 2/4/2022 at 10:00 AM in Telephonic/VTC before Judge James E. Boasberg. (znbn) (Entered: 11/12/2021) |
| 11/10/2021 | | Set/Reset Deadlines/Hearings: Discovery due by 2/3/2022. Post–Discovery Hearing set for 2/4/2022 at 10:00 AM in Telephonic/VTC before Judge James E. Boasberg. (lsj) (Entered: 11/10/2021) |
| 01/31/2022 | 30 | Joint MOTION for Extension of Time to Complete Discovery *and Re–Schedule Post–Discovery Conference* by STEVEN T. MNUCHIN. (Attachments: # 1 Proposed Order)(Simon, Jeremy). Added MOTION to Continue on 1/31/2022 (ztth). (Entered: 01/31/2022) |
| 01/31/2022 | | MINUTE ORDER GRANTING 30 Joint Motion to Extend Discovery Cut–Off Date. The Court ORDERS that: 1) The deadline for the parties to complete discovery shall be February 11, 2022; and 2) The post–discovery status conference set for February 4, 2022, at 10:00 a.m. is VACATED and RESET for February 14, 2022, at 11:00 a.m. So ORDERED by Judge James E. Boasberg on 1/31/2022. (lcjeb1) (Entered: 01/31/2022) |
| 01/31/2022 | | Set/Reset Deadlines/Hearings: Discovery due by 2/11/2022. Status Conference set for 2/14/2022 at 11:00 AM in Telephonic/VTC before Judge James E. Boasberg. (nbn) (Entered: 01/31/2022) |
| 02/11/2022 | 31 | Consent MOTION for Extension of Time to Complete Discovery by LESTER A. LEACH. (Attachments: # 1 Text of Proposed Order Proposed Order)(Seldon, Robert) (Entered: 02/11/2022) |
| 02/14/2022 | | MINUTE ORDER GRANTING Consent 31 Motion to Extend Discovery Deadline. The Court ORDERS that: 1) The deadline for the parties to complete discovery shall be March 4, 2022; 2) The parties shall file a Joint Status Report by March 4, 2022; and 3)The post–discovery status conference set for February 14, 2022, at 11:00 a.m. is VACATED. So ORDERED by Judge James E. Boasberg on 2/14/2022. (lcjeb1) (Entered: 02/14/2022) |
| 02/14/2022 | | Set/Reset Deadlines: Discovery due by 3/4/2022. (znbn) (Entered: 02/14/2022) |
| 03/04/2022 | 32 | Consent MOTION for Extension of Time to *File Joint Report* by LESTER A. LEACH. (Attachments: # 1 Text of Proposed Order)(Seldon, Robert) (Entered: 03/04/2022) |
| 03/04/2022 | | MINUTE ORDER GRANTING Consent 32 Motion for Extension of Time to File Joint Status Report. The Court ORDERS that the parties shall file a Joint Status Report by March 8, 2022. So ORDERED by Judge James E. Boasberg on 3/4/2022. (lcjeb1) (Entered: 03/04/2022) |
| 03/04/2022 | | Set/Reset Deadlines: Joint Status Report due by 3/8/2022. (nbn) (Entered: 03/04/2022) |
| 03/08/2022 | 33 | Joint STATUS REPORT *and Motion to Suspend Discovery Cut–Off* by LESTER A. LEACH. (Attachments: # 1 Text of Proposed Order Proposed Order)(Seldon, Robert) (Entered: 03/08/2022) |
| 03/08/2022 | | |

| | | MINUTE ORDER: The Court ORDERS that the parties appear for a telephonic hearing regarding the discovery disputes on March 24, 2022, at 11:00 a.m. So ORDERED by Judge James E. Boasberg on 3/8/2022. (lcjeb1) (Entered: 03/08/2022) |
|---|---|---|
| 03/08/2022 | 34 | MOTION to Suspend Discovery Cut–Off by LESTER A. LEACH. (See Docket Entry 33 to view document) (ztth) (Entered: 03/09/2022) |
| 03/08/2022 | | Set/Reset Hearings: Status Conference set for 3/24/2022 at 11:00 AM in Telephonic/VTC before Judge James E. Boasberg. (nbn) (Entered: 03/09/2022) |
| 03/09/2022 | | NOTICE OF ERROR re 33 Status Report; emailed to rcs@sba–pc.com, cc'd 11 associated attorneys –– The PDF file you docketed contained errors: 1. Two–part docket entry, 2. Please do not refile. In future, be sure to docket all parts of the pleading. (ztth, ) (Entered: 03/09/2022) |
| 03/24/2022 | | Minute Entry for proceedings held before Judge James E. Boasberg: Video Status Conference held on 3/24/2022. Status Conference set for 5/13/2022 at 10:00 AM in Telephonic/VTC before Judge James E. Boasberg. (Court Reporter Lisa Griffith) (nbn) (Entered: 03/24/2022) |
| 03/24/2022 | | MINUTE ORDER: As discussed in today's discovery hearing, the Court ORDERS that: 1) Plaintiff's 34 Motion to Suspend Discovery Cut–Off is GRANTED; 2) Defendant shall produce the required documents by April 15, 2022; 3) The remaining depositions shall take place by May 6, 2022; 4) The parties shall return for a post–discovery status hearing on May 13, 2022, at 10:00 a.m.; 5) Defendant shall produce all documents related to any complaint about David Motl in regard to race, color, or national–origin discrimination or retaliation, or his investigation of same; and 6) The depositions of Motl (3.5 hours), Bill Bailey (2 hours), Bobby McCoy (3.5 hours), and Dennis O'Connor (2 hours) shall be confined to complaints by Lisa Dickerson and issues that naturally flow from testimony about them. So ORDERED by Judge James E. Boasberg on 3/24/2022. (lcjeb1) (Entered: 03/24/2022) |
| 05/04/2022 | 35 | NOTICE *to the Court Concerning Document Production* by LESTER A. LEACH re Order on Motion for Miscellaneous Relief,,, (Seldon, Robert) (Entered: 05/04/2022) |
| 05/06/2022 | 36 | Joint MOTION for Extension of Time to *Take Final Deposition Pursuant to Minute Order of Mar. 24, 2022* by LESTER A. LEACH. (Attachments: # 1 Text of Proposed Order Proposed Order)(Seldon, Robert) (Entered: 05/06/2022) |
| 05/09/2022 | | MINUTE ORDER GRANTING Joint 36 Motion for Extension of Time. The Court ORDERS that the deadline to take the resumed deposition of David Motl is May 9, 2022. So ORDERED by Judge James E. Boasberg on 5/9/2022. (lcjeb1) (Entered: 05/09/2022) |
| 05/11/2022 | 37 | SEALED MOTION filed by LESTER A. LEACH (Attachments: # 1 Att. A, # 2 Att. B, # 3 Att. C, # 4 Att. D, # 5 Att. D–1, # 6 Att. E, # 7 Att. F, # 8 Att. G, # 9 Att. H, # 10 Nicholson Testimony in Craig v. Mnuchin, # 11 Text of Proposed Order)(Buie, Molly, Modified on 2/14/2023) – unsealed pursuant to 46 Order filed 7/8/2022. (ztth). (Entered: 05/11/2022) |
| 05/12/2022 | 38 | STATUS REPORT *re: Minute Order of March 24, 2022 and Summary Judgment Schedule* by LESTER A. LEACH. (Attachments: # 1 Exhibit Tr. Conf. Mar. 24, 2022 (excerpt))(Seldon, Robert) (Entered: 05/12/2022) |
| 05/12/2022 | 39 | RESPONSE re 38 Status Report *(Defendant's Response to Plaintiff's Status Report)* filed by STEVEN T. MNUCHIN. (Simon, Jeremy) (Entered: 05/12/2022) |

| 05/13/2022 | | Minute Entry for proceedings held before Judge James E. Boasberg: Video Status Conference held on 5/13/2022. Order forthcoming. (Court Reporter Lisa Griffith) (nbn) (Entered: 05/13/2022) |
|---|---|---|
| 05/13/2022 | | MINUTE ORDER: As discussed at today's status hearing, the Court ORDERS that: 1) Defendant's Opposition to Plaintiff's 37 Privilege Motion shall be due by June 1, 2022, with Plaintiff's Reply due by June 15, 2022; and 2) Defendant shall file its Motion for Summary Judgment by July 15, 2022, with Plaintiff's Opposition due by September 15, 2022, and Defendant's Reply due by October 17, 2022. So ORDERED by Judge James E. Boasberg on 5/13/2022. (lcjeb2) (Entered: 05/13/2022) |
| 05/13/2022 | | Set/Reset Deadlines: Responses due by 6/1/2022 Replies due by 6/15/2022. Summary Judgment motions due by 7/15/2022. Response to Motion for Summary Judgment due by 9/15/2022. Reply to Motion for Summary Judgment due by 10/17/2022. (znbn) (Entered: 05/13/2022) |
| 05/31/2022 | 40 | Consent MOTION for Extension of Time to *File Response to Plaintiff's Motion to Determine Privilege* by STEVEN T. MNUCHIN. (Attachments: # 1 Proposed Order)(Simon, Jeremy) (Entered: 05/31/2022) |
| 06/01/2022 | | MINUTE ORDER GRANTING Consent 40 Motion for Extension of Time. The Court ORDERS that Defendant's Opposition to Plaintiff's 37 Privilege Motion shall be due by June 6, 2022, with Plaintiff's Reply due by June 17, 2022. So ORDERED by Judge James E. Boasberg on 6/1/2022. (lcjeb1) (Entered: 06/01/2022) |
| 06/01/2022 | | Set/Reset Deadlines: Responses due by 6/6/2022. Replies due by 6/17/2022. (znbn) (Entered: 06/01/2022) |
| 06/06/2022 | 41 | SEALED OPPOSITION filed by STEVEN T. MNUCHIN. re 37 SEALED MOTION filed by LESTER A. LEACH (Attachments: # 1 Exhibit 1 (Organization Chart), # 2 Exhibit 2 (Excerpts from Plaintiff's Initial Disclosure), # 3 Exhibit 3 (Oct. 22, 2021 letter), # 4 Exhibit 4 (Nov. 8, 2021 email), # 5 Exhibit 5 (Excerpts from Nicholson Deposition), # 6 Exhibit 6 (Feb. 7, 2022 email), # 7 Exhibit 7 (Apr. 8, 2022 letter), # 8 Proposed Order)(Simon, Jeremy) Modified on 2/14/2023 – unsealed pursuant to 46 Order filed 7/8/2022 (ztth). (Entered: 06/06/2022) |
| 06/17/2022 | 42 | SEALED REPLY TO OPPOSITION filed by LESTER A. LEACH re 37 SEALED MOTION filed by LESTER A. LEACH (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Att. I, # 2 Att. J, # 3 Att. K, # 4 Att. L, # 5 Att. M, # 6 Att. N, # 7 Att. O, # 8 Att. P, # 9 Att. Q)(Buie, Molly) Modified on 2/14/2023 – unsealed pursuant to 46 Order filed 7/8/2022(ztth). (Entered: 06/17/2022) |
| 06/29/2022 | 43 | NOTICE OF WITHDRAWAL OF APPEARANCE as to LESTER A. LEACH. Attorney Molly E. Buie terminated. (Buie, Molly) (Entered: 06/29/2022) |
| 06/30/2022 | 44 | MOTION for Extension of Time to *File Motion for Summary Judgment* by STEVEN T. MNUCHIN. (Attachments: # 1 Proposed Order)(Simon, Jeremy) (Entered: 06/30/2022) |
| 07/01/2022 | | MINUTE ORDER: The Court ORDERS that if Plaintiff opposes Defendant's 44 Motion for Extension beyond what is stated in the Motion, he shall file such opposition by July 5, 2022. So ORDERED by Judge James E. Boasberg on 7/1/2022. (lcjeb1) (Entered: 07/01/2022) |
| 07/01/2022 | 45 | |

| | | |
|---|---|---|
| | | NOTICE *re: Minute Order of July 1, 2022* by LESTER A. LEACH re Order (Seldon, Robert) (Entered: 07/01/2022) |
| 07/05/2022 | | MINUTE ORDER: The Court ORDERS that Defendant's 44 Motion for Extension is GRANTED inasmuch as Defendant's Motion for Summary Judgment shall be due on August 16, 2022, with Plaintiff's Opposition due September 30, 2022, and Defendant's Reply due October 21, 2022. So ORDERED by Judge James E. Boasberg on 7/5/2022. (lcjeb2) (Entered: 07/05/2022) |
| 07/05/2022 | | Set/Reset Deadlines: Summary Judgment motions due by 8/16/2022. Response to Motion for Summary Judgment due by 9/30/2022. Reply to Motion for Summary Judgment due by 10/21/2022. (nbn) (Entered: 07/05/2022) |
| 07/08/2022 | 46 | ORDER: For the reasons set forth in the accompanying Memorandum Opinion, the Court ORDERS that: (1) Plaintiffs' 37 Motion to Determine Privilege is GRANTED; (2) The claim of attorney−client privilege asserted over the emails sent to and by Defendant's former Chief Counsel on July 11, 2018, as provided in [37−4], is not sustained; and (3) The pleadings in 37 , 41 , and 42 shall be unsealed. Signed by Judge James E. Boasberg on 7/8/2022. (lcjeb2) (Entered: 07/08/2022) |
| 07/08/2022 | 47 | MEMORANDUM OPINION re. Order 46 on Motion to Determine Privilege. Signed by Judge James E. Boasberg on 7/8/2022. (lcjeb2) (Entered: 07/08/2022) |
| 08/16/2022 | 48 | MOTION for Summary Judgment *, Local Rule 7(h) Statement and Supporting Memorandum* by STEVEN T. MNUCHIN. (Attachments: # 1 Proposed Order, # 2 Declaration of Ralph Conte, # 3 Declaration of Dennis O'Connor, # 4 Declaration of Bill Bailey, # 5 Declaration of Anthony Scott, # 6 Excerpts from EEO Declaration of Bill Bailey, # 7 EEO Declaration of DeAnna Wynn, # 8 Excerpts from the O'Connor Deposition, # 9 Excerpts from the Bailey Deposition, # 10 Excerpts from the Medina Deposition, # 11 Excerpts from the Trimble Deposition)(Simon, Jeremy) (Entered: 08/16/2022) |
| 08/16/2022 | 49 | SEALED DOCUMENT filed by STEVEN T. MNUCHIN re 48 MOTION for Summary Judgment *, Local Rule 7(h) Statement and Supporting Memorandum* (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Excerpts from the Deposition of Lester Leach, # 2 Excerpts from the Deposition of Bill Bailey (unredacted version), # 3 Unredacted Declaration of Bill Bailey with exhibit 2, # 4 Exhibits 2, 4 and 5 to Conte Declaration and unredacted versions of exhibits 6 and 13 to that declaration, # 5 Exhibit 3 to O'Connor Declaration and first page of Exhibit 1 to that declaration, # 6 First page to exhibit 1 of Scott Declaration)(Simon, Jeremy) (Entered: 08/16/2022) |
| 08/23/2022 | 50 | Consent MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Angela St. Pierre, Filing fee $ 100, receipt number ADCDC−9461907. Fee Status: Fee Paid. by LESTER A. LEACH. (Attachments: # 1 Affidavit Decl. Pro Hac Vice, # 2 Text of Proposed Order proposed Order)(Seldon, Robert) (Entered: 08/23/2022) |
| 08/23/2022 | | MINUTE ORDER GRANTING 50 Motion for Admission *Pro Hac Vice* of ANGELA K. ST. PIERRE. **Counsel should register for e−filing via PACER and file a notice of appearance pursuant to LCvR 83.6(a).** Click for instructions. So ORDERED by Judge James E. Boasberg on 8/23/2022. (lcjeb1) (Entered: 08/23/2022) |
| 08/23/2022 | | NOTICE OF ERROR regarding 50 Consent MOTION for Leave to Appear Pro Hac Vice :Attorney Name− Angela St. Pierre, Filing fee $ 100, receipt number ADCDC−9461907. Fee Status: Fee Paid.. The following error(s) need correction: Pro |

| | | |
|---|---|---|
| | | Hac Vice motion must be accompanied by a Certificate of Good Standing issued within the last 30 days (LCvR 83.2(c)(2)). Please file certificate as an Errata. (ztth) (Entered: 08/23/2022) |
| 09/02/2022 | 51 | NOTICE of Appearance by Angela Kristin St. Pierre on behalf of All Plaintiffs (St. Pierre, Angela) (Entered: 09/02/2022) |
| 09/19/2022 | 52 | Consent MOTION for Extension of Time to *Amend Summary Judgment Briefing Schedule* by LESTER A. LEACH. (Attachments: # 1 Text of Proposed Order Proposed Order)(Seldon, Robert) (Entered: 09/19/2022) |
| 09/19/2022 | | MINUTE ORDER: The Court ORDERS that: 1) The Consent 52 Motion to Amend Summary Judgment Briefing Schedule is GRANTED; 2) Plaintiff shall file his Opposition to Defendant's Motion for Summary Judgment by October 31, 2022; and 3) Defendant shall file its Reply by December 1, 2022. So ORDERED by Judge James E. Boasberg on 9/19/2022. (lcjeb1) (Entered: 09/19/2022) |
| 09/19/2022 | | Set/Reset Deadlines: Response to Motion for Summary Judgment due by 10/31/2022. Reply to Motion for Summary Judgment due by 12/1/2022. (nbn) (Entered: 09/20/2022) |
| 10/24/2022 | 53 | Consent MOTION for Extension of Time to File *Opposition to Def. Motion for Summary Judgment* by LESTER A. LEACH. (Attachments: # 1 Text of Proposed Order Proposed Order)(Seldon, Robert) (Entered: 10/24/2022) |
| 10/25/2022 | | MINUTE ORDER: The Court ORDERS that: 1) The 53 Motion for Extension of Time is GRANTED; 2) Plaintiff shall file his Opposition to Defendant's Motion for Summary Judgment by November 14, 2022; and 3) Defendant shall file a Reply by December 16, 2022. So ORDERED by Judge James E. Boasberg on 10/25/2022. (lcjeb1) (Entered: 10/25/2022) |
| 10/25/2022 | 54 | NOTICE *of Filing Certificate of Good Standing* by LESTER A. LEACH (Attachments: # 1 Certificate of Good Standing)(St. Pierre, Angela) (Entered: 10/25/2022) |
| 10/25/2022 | | Set/Reset Deadlines: Response to Motion for Summary Judgment due by 11/14/2022. Reply to Motion for Summary Judgment due by 12/16/2022. (nbn) (Entered: 10/25/2022) |
| 11/14/2022 | 55 | Consent MOTION for Extension of Time to *of Two Days to File Opposition to Def. Motion for Summary Judgment* by LESTER A. LEACH. (Attachments: # 1 Text of Proposed Order Proposed Order)(Seldon, Robert) (Entered: 11/14/2022) |
| 11/14/2022 | | MINUTE ORDER: The Court ORDERS that: 1) The 55 Motion for Extension of Time is GRANTED; and 2) Plaintiff shall file his Opposition to Defendant's Motion for Summary Judgment by November 16, 2022. So ORDERED by Judge James E. Boasberg on 11/14/2022. (lcjeb1) (Entered: 11/14/2022) |
| 11/14/2022 | | Set/Reset Deadlines: Response to Motion for Summary Judgment due by 11/16/2022. (nbn) (Entered: 11/15/2022) |
| 11/16/2022 | 56 | NOTICE *of Filing Under Seal* by LESTER A. LEACH (Seldon, Robert) (Entered: 11/16/2022) |
| 11/16/2022 | 57 | Consent MOTION for Leave to File Excess Pages *re: Pl. Opposition and Def. Reply* by LESTER A. LEACH. (Attachments: # 1 Text of Proposed Order Order)(Seldon, |

| | | Robert) (Entered: 11/16/2022) |
|---|---|---|
| 11/16/2022 | 58 | STRICKEN FROM THE RECORD PUSUANT TO MINUTE ORDER 11/17/2022.....SEALED OPPOSITION filed by LESTER A. LEACH. re 48 Motion for Summary Judgment,, (Attachments: # 1 Declaration Leach Decl., # 2 Text of Proposed Order proposed Order)(Seldon, Robert); Modified on 11/23/2022 (ztth). (Entered: 11/16/2022) |
| 11/16/2022 | 59 | SEALED DOCUMENT filed by LESTER A. LEACH re 58 Sealed Opposition (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Bailey Dep. Excerpt, # 2 Exhibit Dickerson Dep. Excerpt, # 3 Exhibit Medina Dep. Excerpt, # 4 Exhibit Motl Dep. Excerpt, # 5 Exhibit Nicholson Dep. Excerpt, # 6 Exhibit O' Connor Dep. Excerpt, # 7 Exhibit Peterson Dep. Excerpt, # 8 Exhibit Trimble Dep. Excerpt)(Seldon, Robert) (Entered: 11/17/2022) |
| 11/17/2022 | 60 | NOTICE *of Filing of Statement of Genuine Issues and Response to Statement of Material Facts* by LESTER A. LEACH re 58 Sealed Opposition (Attachments: # 1 Exhibit Statement of Genuine Issues, # 2 Exhibit Resp. to Def. St. Mat. Facts)(Seldon, Robert) (Entered: 11/17/2022) |
| 11/17/2022 | 61 | SEALED DOCUMENT filed by LESTER A. LEACH re 58 Sealed Opposition (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Exhibit 2 – Medina Email 12.21.2016, # 2 Exhibit Exhibit 17 – Emails Bailey Trimble incl. att., # 3 Exhibit Exhibit 20 – Emails Leach Medina re Family Matters, # 4 Exhibit Exhibit 25 – MOU, # 5 Exhibit Exhibit 31 – Referral 1.17.2017, # 6 Exhibit Exhibit 33 – Email Bailey Leach re Graddy, # 7 Exhibit Exhibit 43 – Notice of Proposed Suspension 1.31.2018, # 8 Exhibit Exhibit 44 – CITI card effort, # 9 Exhibit Exhibit 45 – Voucher Approval, # 10 Exhibit Exhibit 49 – PMAC Separate, # 11 Exhibit Exhibit 52 – O'Connor ROI Aff., # 12 Exhibit Exhibit 53 – Suspension Decision 4.11.2018, # 13 Exhibit Exhibit 57 – Motl Request for Affidavit, # 14 Exhibit Exhibit 58 – Motl ROI Aff., # 15 Exhibit Exhibit 59 – Nicholson Aff. Craig Cplt MINT–17–0812–F, # 16 Exhibit Exhibit 60 – Motl Mint Response to Treasury on Dealing with Poor Performers Motl – editsMS5–9–2017, # 17 Exhibit Exhibit 61 – Motl Response to Treasury on Dealing with Poor Performers Motl – edits 5–9–2017, # 18 Exhibit Exhibit 63 – McCoy PD Classified, # 19 Exhibit Exhibit 66 – Dickerson retaliation EEO Cplt., # 20 Exhibit Exhibit 70 – Peterson Request (email) for Affidavit, # 21 Exhibit Exhibit 70 – Peterson Request (email) for Affidavit, # 22 Exhibit Exhibit 78 – Motl Letter 4.11.2016, # 23 Exhibit Exhibit 79 – Dickerson Settlement Agreement, # 24 Exhibit Exhibit 80 – Dickerson emails ref 9.20.2016, # 25 Exhibit Exhibit 91 – Bailey Dickerson ROI Aff., # 26 Exhibit Exhibit 93 – Motl Dickerson ROI Aff., # 27 Exhibit Exhibit 94 – Dickerson AI)(Seldon, Robert) (Entered: 11/17/2022) |
| 11/17/2022 | 62 | SEALED DOCUMENT filed by LESTER A. LEACH re 58 Sealed Opposition (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Att. A – FY 08 Appraisal, # 2 Exhibit Att. B – FY 09 Appraisal.pdf, # 3 Exhibit Att. C – FY 10 Appraisal, # 4 Exhibit Att. D – FY 11 Appraisal, # 5 Exhibit Att. E – FY 12 Appraisal, # 6 Exhibit Att. F – FY 13 Appraisal, # 7 Exhibit Att. G – FY14 Appraisal, # 8 Exhibit Att. H – FY15 Appraisal, # 9 Exhibit Att. I – FY16 Appraisal, # 10 Exhibit Att. J – Leach Dep. Exh. 9 – 2016 Formal Cplt, # 11 Exhibit Att. K – OIG Referral 1.17.2017, # 12 Exhibit Att. L – OIG ROI and Doc's, # 13 Exhibit Att. M – Bailey to OIG re Leach's teleworking, # 14 Exhibit Att. N – Bailey to OIG re Leach's T&A, # 15 Exhibit Att. O – Counselor's Report 2017 EEO Cplt., # 16 |

|  |  | Text of Proposed Order Att. P – Leach Dep. Exh. 16 –– Web TA, # 17 Exhibit Att. Q – Delikaya Emails, # 18 Exhibit Att. R – Leach Mint Award History, # 19 Exhibit Att. S – Def Responses to Pl INT's, # 20 Exhibit Att. T – Leach EEO Aff. Mint–16–0685, # 21 Exhibit Att. U – Counselor's Report 2016 EEO Cplt., # 22 Exhibit Att. V – Leach EEO Counseling Intake No. 16–0685, # 23 Exhibit Att. W – Leach Notice of Right to File No. 16–0685, # 24 Exhibit Att. X – Leach EEO Counselor email Report No. 16–0685 8.17.2018 re reaching Motl, # 25 Exhibit Att. Y – Jeppson Request for Affidavit, # 26 Exhibit Att. Z – Geoli Request for Aff.)(Seldon, Robert) (Entered: 11/17/2022) |
|---|---|---|
| 11/17/2022 | 63 | SEALED DOCUMENT filed by LESTER A. LEACH re 58 Sealed Opposition (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Exhibit Att. AA – Jeppson ROI Aff., # 2 Exhibit Att. BB – Geoli ROI Aff., # 3 Exhibit Att. CC – Motl email re appointment of McNally 12.19.2016, # 4 Exhibit Att. DD – Bailey ROI Aff., # 5 Exhibit Att. EE – Dickerson EEO Counseling Report, # 6 Exhibit Att. FF – Dickerson original acceptance EEO of claims, # 7 Exhibit Att. GG – Dickerson formal EEO complaint, # 8 Exhibit Att. HH – Dickerson 1st ROI Aff., # 9 Exhibit Att. II – Dickerson acceptance of retaliation claim (redacted), # 10 Exhibit Att. JJ – Dickerson acceptance of retaliation claim (unredacted), # 11 Exhibit Att. KK – Nicholson Errata 3.8.2022 Signed, # 12 Exhibit Att. LL – Nicholson Testimony Craig v Mnuchin Apr. 11, 2018, # 13 Exhibit Att. MM – McNally email to Yauss re Nicholson, # 14 Exhibit Att. NN – Gentry email re Nicholson, # 15 Exhibit Att. OO – Bailey ROI Aff 19–0994, # 16 Exhibit Att. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with AttachmentsAtt. QQ – Bailey MOA with Attachments, # 17 Exhibit Att. RR – Bailey to Trimble MI Related Materials, # 18 Exhibit Att. SS – Draft Reassignment (undated), # 19 Exhibit Att. TT – Counselor's Report 2018 EEO Cplt., # 20 Exhibit Att. UU – Def Responses to Pl Written Discovery, # 21 Exhibit Att. VV – FY 2020 Appraisal, # 22 Exhibit Att. WW – Email Trimble Leach 9.19.2017, # 23 Exhibit Att. XX – Reply to Proposed Suspension)(Seldon, Robert) (Entered: 11/17/2022) |
| 11/17/2022 |  | MINUTE ORDER: The Court ORDERS that Plaintiff's 57 Motion for Excess Pages is DENIED. 45 pages is more than enough for an opposition in this matter. So ORDERED by Judge James E. Boasberg on 11/17/2022. (lcjeb1) (Entered: 11/17/2022) |
| 11/17/2022 |  | MINUTE ORDER: The Court ORDERS that Plaintiff's 58 Opposition is STRICKEN. Not only does it contain more than 45 pages, but it also has excessive footnotes. Plaintiff shall refile a compliant pleading by November 18, 2022, which is no longer than 45 pages and contains no more than 10 footnotes with no more than 50 aggregate lines of text. So ORDERED by Judge James E. Boasberg on 11/17/2022. (zps) |

| | | |
|---|---|---|
| | | (Entered: 11/17/2022) |
| 11/18/2022 | 64 | ENTERED IN ERROR.....SEALED OPPOSITION filed by LESTER A. LEACH. re 48 Motion for Summary Judgment,, (Seldon, Robert) Modified on 11/23/2022 (ztth). (Entered: 11/18/2022) |
| 11/21/2022 | 65 | SEALED OPPOSITION filed by LESTER A. LEACH. re 48 Motion for Summary Judgment,, (Attachments: # 1 Exhibit Opp Corrected to Def. SJ Motion 11.20.2022 FINAL)(Seldon, Robert) (Entered: 11/21/2022) |
| 11/23/2022 | | NOTICE OF ERROR regarding 64 Sealed Opposition. Other – Said pleading was refiled as Docket Entry 65 . (ztth) (Entered: 11/23/2022) |
| 11/23/2022 | 66 | SEALED DOCUMENT filed by LESTER A. LEACH re 65 Sealed Opposition (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Affidavit Leach Declaration 11.16.2022 (SIGNED), # 2 Text of Proposed Order Order Denying SJ Final 11.16.2022 FINAL)(Seldon, Robert) (Entered: 11/23/2022) |
| 12/01/2022 | 67 | Unopposed MOTION for Order *to File Supplement to Plaintiff's Statement of Genuine Issues and Declaration of Robert C. Seldon, Esq.* by LESTER A. LEACH. (Attachments: # 1 Affidavit Decl. of Robert C. Seldon, Esq., # 2 Text of Proposed Order proposed Order)(Seldon, Robert) (Entered: 12/01/2022) |
| 12/01/2022 | 68 | SEALED DOCUMENT filed by LESTER A. LEACH re 65 Sealed Opposition (This document is SEALED and only available to authorized persons.)(Seldon, Robert) (Entered: 12/01/2022) |
| 12/01/2022 | | MINUTE ORDER: The Court ORDERS that: 1) The 67 Motion to File a Supplement is GRANTED; 2) The Supplement to Plaintiff's Statement of Genuine Issues and Declaration of Robert C. Seldon, Esq., is deemed filed; and 3) Defendant shall file its Reply in support of its Motion for Summary Judgment by January 13, 2023. So ORDERED by Judge James E. Boasberg on 12/1/2022. (lcjeb1) (Entered: 12/01/2022) |
| 12/01/2022 | | Set/Reset Deadlines: Reply to Motion for Summary Judgment due by 1/13/2023. (lsj) (Entered: 12/01/2022) |
| 01/11/2023 | 69 | Consent MOTION for Extension of Time to *File Reply in Support of Motion for Summary Judgment* by STEVEN T. MNUCHIN. (Attachments: # 1 Proposed Order)(Simon, Jeremy) (Entered: 01/11/2023) |
| 01/11/2023 | | MINUTE ORDER: The Court ORDERS that: 1) The Consent 69 Motion for Extension of Time is GRANTED; and 2) Defendant shall file its Reply in support of its Motion for Summary Judgment by February 16, 2023. So ORDERED by Judge James E. Boasberg on 1/11/2023. (lcjeb1) (Entered: 01/11/2023) |
| 01/11/2023 | | Set/Reset Deadlines: Reply to Motion for Summary Judgment due by 2/16/2023. (nbn) (Entered: 01/11/2023) |
| 01/23/2023 | 70 | TRANSCRIPT OF PROCEEDINGS before Judge James E. Boasberg held on 5/13/2022; Page Numbers: 1–24. Date of Issuance:1/23/2023. Court Reporter/Transcriber Lisa Walker Griffith, RPR, Telephone number (202) 354–3247, Transcripts may be ordered by submitting the Transcript Order Form

For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter re ferenced above. After 90 days, the transcript may be accessed via PACER. Other transcript formats, |

| | | |
|---|---|---|
| | | (multi–page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty–one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 2/13/2023. Redacted Transcript Deadline set for 2/23/2023. Release of Transcript Restriction set for 4/23/2023.(rj) (Entered: 01/23/2023) |
| 02/16/2023 | 71 | REPLY to opposition to motion re 48 MOTION for Summary Judgment , *Local Rule 7(h) Statement and Supporting Memorandum* filed by STEVEN T. MNUCHIN. (Attachments: # 1 Defendant's Response to Plaintiff's Statement of Genuine Issues (redacted), # 2 Exhibit 1 (redacted), # 3 Exhibit 2, # 4 Exhibit 3, # 5 Exhibit 4, # 6 Exhibit 5, # 7 Exhibit 6)(Simon, Jeremy) (Entered: 02/16/2023) |
| 02/16/2023 | 72 | SEALED DOCUMENT filed by STEVEN T. MNUCHIN re 71 Reply to opposition to Motion, (This document is SEALED and only available to authorized persons.) (Attachments: # 1 Defendant's Response to Plaintiff's Statement of Genuine Issues (unredacted), # 2 Exhibit 1 to Reply (unredacted))(Simon, Jeremy) (Entered: 02/16/2023) |
| 03/14/2023 | 73 | ORDER: For the reasons set forth in the accompanying Memorandum Opinion, the Court ORDERS that: (1) Defendant's 48 Motion for Summary Judgment is GRANTED; and (2) Judgment is ENTERED in favor of Defendant. Signed by Judge James E. Boasberg on 3/14/2023. (lcjeb3) (Entered: 03/14/2023) |
| 03/14/2023 | 74 | MEMORANDUM OPINION re 73 Order on Motion for Summary Judgment. Signed by Judge James E. Boasberg on 3/14/2023. (lcjeb3) (Entered: 03/14/2023) |
| 03/28/2023 | 75 | Consent MOTION for Extension of Time to *File Bill of Costs* by STEVEN T. MNUCHIN. (Attachments: # 1 Proposed Order)(Simon, Jeremy) (Entered: 03/28/2023) |
| 03/28/2023 | | MINUTE ORDER: The Court ORDERS that: 1) The Consent 75 Motion for Extension of Time is GRANTED; and 2) Defendant shall file its Bill of Costs by April 18, 2023. So ORDERED by Chief Judge James E. Boasberg on 3/28/2023. (lcjeb1) (Entered: 03/28/2023) |
| 03/28/2023 | | Set/Reset Deadlines: Bill of Costs due by 4/18/2023. (znbn) (Entered: 03/28/2023) |
| 04/18/2023 | 76 | BILL OF COSTS by STEVEN T. MNUCHIN. Objection to Bill of Costs due by 5/2/2023. (Attachments: # 1 Bill of Costs)(Simon, Jeremy) (Entered: 04/18/2023) |
| 05/02/2023 | 77 | RESPONSE re 76 Bill of Costs filed by LESTER A. LEACH. (Seldon, Robert) (Entered: 05/02/2023) |
| 05/03/2023 | 78 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 74 Memorandum & Opinion, 73 Order on Motion for Summary Judgment, by LESTER A. LEACH. Filing fee $ 505, receipt number ADCDC–10044586. Fee Status: Fee Paid. Parties have been notified. (Seldon, Robert) (Entered: 05/03/2023) |

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| LESTER A. LEACH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )      **Civ. Action No. 18-3075 (JEB)** |
| | ) |
| JANET YELLEN, | ) |
| SECRETARY OF THE TREASURY | ) |
| | ) |
| Defendant. | ) |
| | ) |

## NOTICE OF APPEAL

Plaintiff respectfully gives notice that he hereby appeals to the United States Court of Appeals for the District of Columbia advises the final Order of the District Court issued on March 13, 2023, that granted defendant's motion for summary judgment and dismissed this action with prejudice. A copy of the District Court's decision and separate Order are attached to this Notice.

Respectfully submitted,

/s/
Robert C. Seldon, Esq.
D.C. Bar No. 245100

/s/
Angela St. Pierre, Esq.
D.C. Bar No. 90003026
Seldon Bofinger & Associates, P.C.
1319 F Street, NW, Suite 200
Washington, DC 20004
(202) 393-8200

1

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LESTER A. LEACH,

     Plaintiff,

       v.

JANET YELLEN, Secretary, United States
Department of the Treasury,

     Defendant.

Civil Action No. 18-3075 (JEB)

## MEMORANDUM OPINION

Plaintiff Lester Leach is a Black employee of the United States Mint, a bureau of the

Department of the Treasury, who has been the target of a series of workplace complaints. After

one of his direct reports alleged that Leach had subjected him to a pattern of verbally abusive

behavior, Plaintiff was investigated by the Office of the Inspector General and ultimately given a

two-day suspension without pay; he was also passed over for a more senior Mint job. Seeking to

turn the tables and claim that he is the one being victimized here, Leach then brought this suit

against Treasury, alleging discrimination and retaliation under Title VII. Defendant now moves

for summary judgment. As no jury could find that Plaintiff was treated improperly, the Court

will grant the Motion.

**I.     Background**

    A.  Factual Background

        1.  *Prior-Conduct Issues*

Leach is a Black man who worked in the Protection Directorate of the Mint as Division

Director for Security. See ECF No. 48 (Defendant's Statement of Undisputed Material Facts),

1

¶¶ 1–3; ECF No. 48-3 (Declaration of Dennis O'Connor), ¶ 3.   In that role, he was responsible for protecting the Mint's monetary and bullion assets and for ensuring that its workforce was appropriately vetted.  See SUMF, ¶ 3; O'Connor Decl., ¶ 3.  His position was considered one of particular sensitivity within the Mint.  See O'Connor Decl., ¶¶ 2–3.  Leach's immediate supervisor was Bill Bailey, who is also Black; and his second-level supervisor was Dennis O'Connor, who is white.  See SUMF, ¶ 4; ECF No. 48-4 (Declaration of Bill Bailey), ¶ 1; O'Connor Decl., ¶¶ 1, 3.

In the years prior to this case, Leach was the subject of numerous complaints from subordinates and others at the Mint.  See SUMF, ¶ 7; Bailey Decl., ¶ 3 ("Over the course of the years of my supervision of Mr. Leach I have personally observed, or other employees have reported directly to me, concerns regarding . . . insubordinate, confrontational, demeaning, condescending, berating, and verbally abusive behavior."); id., ¶¶ 4–12; O'Connor Decl., ¶ 4 ("Over the years (dating as far back as when I started as Chief) I had learned of work related issues with Mr. Leach . . . .  I was aware of approximately six other incidents (and possibly more) where Mr. Leach's subordinates had made complaints about him.").  The first complaint came in 2007 or 2008, when a Mint employee requested and accepted a demotion in order to work outside Leach's supervision.  See SUMF, ¶ 8; Bailey Decl., ¶ 4.  Then in 2008, an employee filed an EEO complaint against Leach based on alleged mistreatment, which ultimately settled.  See SUMF, ¶ 9; Bailey Decl., ¶ 5.  In 2010, a supervisee alleged that Leach was "arrogant, berating, and unprofessional," Bailey Decl., ¶ 6, leading to a management inquiry and ultimately to informal counseling.  See SUMF, ¶¶ 10–13; Bailey Decl., ¶¶ 6–7.  With the list of Leach's "confrontational and insubordinate behavior" growing, Bailey in 2013 authored a two-page memorandum for Leach's file.  See Bailey Decl., Exh. 1 (Memorandum dated Feb. 13,

2013). That document surveyed examples of Leach's unacceptable behavior and warned that "if [Leach's] behavior does not improve[,] [Bailey] will take the appropriate actions going forward" because Bailey was "spending a large amount of time dealing with" Leach-related headaches. Id.

But the hits kept coming. In 2014, Bailey issued Plaintiff an oral counseling after a Department of Treasury investigation concluded that Leach had discriminated against one of his subordinates. See SUMF, ¶ 15; Bailey Decl., ¶ 10; ECF No. 49-1 (Leach Deposition) at 51–56. The next year, another of Leach's supervisees asked that Bailey mediate a communication issue between him and Leach. See SUMF, ¶ 16; Bailey Decl., ¶ 11. In 2016, an IT employee complained about a "verbal altercation" with Leach that left her unwilling to continue a project with him. See SUMF, ¶ 17; Bailey Decl., ¶ 12. Finally, before sending the email that precipitated this case, Arnaldo Medina complained verbally to Bailey about Leach's "abusive conduct." Bailey Decl., ¶ 14; SUMF, ¶ 19; ECF No. 71-2 (Bailey Deposition) at 29–31; ECF No. 48-10 (Medina Deposition) at 83–84.

Leach disputes the merits of these underlying complaints. He contends that other employees were themselves to blame, misinterpreted his remarks, sought voluntary reassignments, and the like. See ECF No. 60-2 (Plaintiff's Response to Def. SUMF), ¶¶ 7–19. Plaintiff also identifies positive performance reviews he received during the time, id., ¶ 14, and suggests that those reviews mean that his supervisors did not believe the complaints against him. Id., ¶ 10. But Leach does not dispute the existence of these complaints (regardless of their merits), nor that notwithstanding any performance reviews, Bailey at various points required that Leach take remedial personnel training, placed a memorandum in his file, and issued him oral

3

counseling.  See Pl. SUMF Resp., ¶¶ 12 (training), 14 (memorandum), 15 (oral counseling); see also ECF No. 71-1 (Def. Resp. to Pl. SUMF) at 21.

One other point of background bears mention.  In August 2016, Leach filed an unrelated EEO complaint alleging that other Mint officials, including Acting Deputy Director David Motl, had denied him funding to attend a training because of his race.  See ECF No. 48-2 (Declaration of Ralph Conte), Exh. 5.  Both of Leach's managers here (Bailey and O'Connor) supported funding that training, and Leach's EEO complaint did not name them.  See SUMF, ¶¶ 28–30. That complaint is relevant only to the extent that Leach contends that Motl still harbored retaliatory animus against him for it.

### 2. *Allegation and Investigation*

On December 21, 2016, against that checkered history, Leach's subordinate Arnaldo Medina sent an email to Bailey and O'Connor describing "abuse behavior" by Leach.  See Bailey Decl., Exh. 3 (Medina Email); SUMF, ¶ 5.  In that email, Medina complained of "constant condescending and verbally abusive" treatment from Leach over a period spanning a year and a half, alleging that he has "never felt so degraded in [his] life."  Medina Email; see SUMF, ¶ 6.  Medina asked that Bailey and O'Connor remove him from Plaintiff's supervision and give him 60–90 days to find employment elsewhere.  See Medina Email; SUMF, ¶ 6. (Leach recognizes that Medina sent that email to his supervisors but argues that the allegations it contained "are baseless and untrue."  Pl. SUMF Response, ¶ 6.)

That email understandably set off alarm bells with Leach's supervisors.  Shortly after receiving it, Bailey recommended to O'Connor that the Mint conduct an administrative investigation into the email's allegations.  O'Connor agreed.  See SUMF, ¶¶ 23–24; Bailey Decl., ¶ 15; O'Connor Decl., ¶ 5.  On January 9, 2017, Bailey informed Plaintiff that the Mint

4

would be investigating his conduct and removing him from supervisory responsibilities pending the outcome of that investigation. See SUMF, ¶¶ 25–26; Bailey Decl., ¶ 16.

Over the subsequent week, O'Connor began to consider whether a more formal investigation by Treasury's Office of the Inspector General would be appropriate. See O'Connor Decl., ¶ 8; SUMF, ¶ 31. An OIG investigation is very similar to an administrative investigation; the main differences are that OIG uses law-enforcement officers to conduct investigations, interviews witnesses under oath, and may refer conduct to the relevant U.S. Attorney's office. See O'Connor Decl., ¶ 6. O'Connor ultimately concluded that an OIG investigation was warranted. He did so based on "the seriousness of the allegations, Mr. Leach's senior level, supervisory, and sensitive position within the Protection Directorate, as well as [O'Connor's] general knowledge of the past complaints against Mr. Leach." O'Connor Decl., ¶ 8; SUMF, ¶ 31. On January 17, 2017, O'Connor thus referred the Medina email to OIG. See ECF No. 48-5 (Declaration of Anthony Scott), Exh. 1 (Referral Letter); O'Connor Decl., ¶ 9; SUMF, ¶ 32. OIG reviewed the referral and decided to accept the matter for investigation, sharing its decision with O'Connor on January 24, 2017. See O'Connor Decl., Exh. 2 (OIG Investigation Letter); ¶¶ 11–12; SUMF, ¶¶ 35–36.

Two relevant events occurred between when Bailey notified Leach that he would be investigated (January 9) and when O'Connor referred the matter to OIG (January 17). First, on January 11, Leach contacted an EEO counselor and alleged that the Mint's administrative investigation and interim removal of his supervisory duties were discriminatory and retaliatory. See SUMF, ¶ 27; Conte Decl., Exh. 4. In their sworn affidavits, O'Connor and Bailey both testify that they did not know about that EEO complaint at the time that O'Connor referred the matter to OIG. See SUMF, ¶ 33; O'Connor Decl., ¶ 10; Bailey Decl., ¶ 18. Second, O'Connor

5

briefed both Acting Deputy Director Motl and Chief Counsel Jean Gentry, informing the two that the agency planned to investigate Medina's allegations.  See O'Connor Decl., ¶ 8.

As before, Leach does not directly contest the veracity of these specific facts.  He instead takes a tangential approach, arguing that O'Connor did not independently verify the allegations before referring the matter to OIG, that O'Connor did not send prior positive performance reviews to OIG, and that OIG's decision to investigate was based only on "false and pretextual allegations."  Pl. SUMF Resp., ¶¶ 35–36; see generally id., ¶¶ 31–37.  The Court discusses these arguments later.  For present purposes, it notes only that Leach cites no record evidence to dispute the basic outline of the facts set forth above.

### 3.  *Suspension, Telework, and Detail*

OIG accepted the matter for investigation on January 24, 2017, and issued its final report on November 17, 2017.  See SUMF, ¶¶ 37, 39; Conte Decl., Exh. 6 (OIG Report).  As a part of its investigation, OIG interviewed eight Mint employees, including Leach.  See OIG Report at 2. It also offered Plaintiff the opportunity to submit any documents that he viewed as relevant, which he did.  Id. (noting OIG reviewed "[r]ebuttal documents provided to TOIG by Lester Leach"); SUMF, ¶ 37.

During his recorded and transcribed OIG interview, Leach made several statements that suggested that others could view him as intimidating:

- Quite often, I'm the only one in the room who really knows what I'm talking about, because I have put time in a lot of things that other people haven't.  So, I think part of that issue is some people may feel intimidated, but do I go on lording over people?  No, I don't have to, but I can't help if other people feel intimidated because I try to be accomplished, and I'm always trying to gain new skills.

- . . . I can't help the fact that other people don't put as much effort into developing their craft as I do, and their response to that quite often is going to be, "Well, he thinks he knows more than

6

> everybody."  In a lot of cases, I do.  I'm sorry.  In a lot of cases, I'm going to be the only one in the room that knows what I'm talking about.
>
> ▪ [My wife] says, "Lester, you can't help it, but you do know more than other people, and you got to try to tone it down."  I try, but I can't help the fact that other people are going to get intimidated by it, and that was [my wife's] assessment . . .  My knowledge and expertise to some people are intimidating.

Conte Decl., Exh. 7 (Leach Interview Transcript); SUMF, ¶ 38.

OIG issued its final, 12-page (plus appendices) report on November 17.  The investigation found "substantiated" the allegation that Leach had "subjected a subordinate employee to condescending and verbally abusive behavior over several months."  OIG Report at 10; SUMF, ¶ 39; Conte Decl., Exh. 8 (OIG Conclusion Letter).  It noted that "multiple" current and former Mint employees "corroborated Leach's inappropriate behavior."  OIG Report at 10.  And it listed several regulations and policies that it suggested were relevant to Plaintiff's conduct.  Id.

Based on the report's findings, Bailey issued Leach a Notice of Proposed Suspension on January 31, 2018.  See SUMF, ¶ 40; Bailey Decl., ¶ 19; Bailey Decl., Exh. 5 (Notice of Proposed Suspension).  That five-page Notice concluded that Leach had conducted himself in a manner unbecoming a federal-government manager.  See Notice of Proposed Suspension at 1–2.  It also found that Leach had failed to follow instructions, failed to respond to a supervisor's request, and failed to timely pay an overdue balance on a government-issued travel credit card.  Id.  The Notice accordingly proposed to suspend him without pay for five days, and it noted that under the Mint's telework policies any disciplinary action would also end Leach's ability to telework.  See SUMF, ¶¶ 41–42; Notice of Proposed Suspension at 1, 5.

7

On April 11, 2018, O'Connor issued a nine-page Notice of Suspension Decision. <u>See</u>
O'Connor Decl., Exh. 3 (Suspension Decision). That memorandum "carefully reviewed and
considered" Leach's responses to Bailey's Notice of Proposed Suspension, but ultimately
sustained the charges. <u>See</u> Suspension Decision at 1, 2–5; SUMF, ¶ 42; O'Connor Decl., ¶ 16.
O'Connor concluded that the consistent statements of five employees under Leach's supervision,
the similarity of those reports with prior incidents in Leach's file, and the corroborative effect of
Leach's tone with the investigator all led him to "agree with the TOIG's finding that [Leach]
subjected Arnaldo Medina to condescending and verbally abusive behavior." Suspension
Decision at 2. O'Connor also sustained the charges of failure to follow instructions, failure to
respond to a supervisor's request, and failure to timely pay his federal card balance. <u>Id.</u> at 3–6.
Balancing "great concern" about these violations with a recognition that Leach is "very capable"
regarding security issues and had received positive performance reviews in the past, O'Connor
determined that his conduct warranted a two-day suspension without pay — down from the
proposed five-day suspension without pay. <u>Id.</u> at 7–8. As a result of that misconduct finding,
Leach's participation in the Mint's telework program was also terminated. <u>See</u> SUMF, ¶ 42;
O'Connor Decl., ¶ 16.

Also based on the OIG report, Bailey determined that Leach "could no longer be trusted
with supervisory authority" because of the serious morale problems his behavior had caused.
<u>See</u> Bailey Decl., ¶ 21; SUMF, ¶ 43. Bailey accordingly coordinated with the Mint's
Information Technology Directorate (ITD) to detail Leach to that office. <u>See</u> SUMF, ¶ 44;
Bailey Decl., ¶ 22. Leach served on that detail from February 2018 through March 2019, and he
then was permanently reassigned to a nonsupervisory position back in the Protection Directorate.
<u>See</u> SUMF, ¶¶ 44–46; Bailey Decl., ¶ 23.

Here, too, Leach does not identify record evidence that disputes the basic facts. He rejects Defendant's conclusions because in his view the OIG report was based on "pretextual information," Pl. SUMF Resp., ¶ 40, its conclusions were "engineered," id., ¶¶ 41, 43, and the underlying allegations were "untrue." Id., ¶¶ 42, 43. The Court considers these arguments below, but notes here only that they do not call into question the underlying narrative facts.

4.  *Non-Selection*

One final coda. In May 2017, with the OIG investigation ongoing, the division in which Leach worked received approval from agency leadership to create a new Assistant Deputy Chief of Police position. See SUMF, ¶ 47; O'Connor Decl., ¶ 17; id., Exh. 4 (ADC Approval). That position was senior to Leach's former role. See SUMF, ¶ 47. The Mint posted a vacancy announcement on August 1 of that year, and Leach applied for the job. See SUMF, ¶¶ 48–49. A three-member selection panel interviewed him and two other candidates. Id., ¶¶ 49–51. Plaintiff does not contend that any of the interview panelists harbored discriminatory or retaliatory animus towards him. Id.

During Leach's interview, one panelist observed that "Leach did not answer or insufficiently answered several questions." ECF No. 48-7 (EEO Declaration of DeAnna Wynn) at 5; SUMF, ¶ 50. Plaintiff also "seemed to suggest that the position for which he was interviewing is a position that he currently occupies" and "asked if the interview panel had seen the vacancy announcement or job description." Wynn Decl. at 6. Perhaps unsurprisingly, Leach received the lowest score of the three applicants, and the panel did not refer him to Bailey, the selecting official, for further consideration. Id. at 8 (comparing Leach's score of 41 to other interviewees' scores of 69 and 74); SUMF, ¶ 52. Bailey ultimately selected Bobby McCoy for

9

the position. See SUMF, ¶¶ 53–54; Bailey Decl., ¶ 26. McCoy was a twenty-year veteran and an experienced Mint official, and he is also Black. See SUMF, ¶¶ 53–54; Bailey Decl., ¶ 26.

Leach asserts that the position was created as pretext to cut him out from department leadership. See Pl. SUMF Resp., ¶ 47. The Court considers that argument below. For present purposes, however, it notes that the record reflects these basic facts around the new position and Leach's non-selection for it.

### B. Procedural History

Plaintiff filed this lawsuit on December 21, 2018. See ECF No. 1 (Compl.). He contends that the many agency actions described above were each discriminatory and retaliatory in violation of Title VII. Id., ¶¶ 66–74 (Count I), 80–84 (Count III). He also argues that those actions created a hostile work environment. Id., ¶¶ 75–79 (Count II), 85–88 (Count IV). Treasury now moves for summary judgment on all of Leach's counts.

## II.    Legal Standard

Summary judgment must be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, 477 U.S. 242, 247–48 (1986); Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006). A fact is "material" if it is capable of affecting the substantive outcome of the litigation. See Liberty Lobby, 477 U.S. at 248; Holcomb, 433 F.3d at 895. A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby, 477 U.S. at 248; see also Scott v. Harris, 550 U.S. 372, 380 (2007); Holcomb, 433 F.3d at 895. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion" by "citing to particular parts of materials in the record" or "showing that the materials cited do not establish the absence or presence of a genuine

10

dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed.
R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, "[t]he evidence of the non-movant is to
be believed, and all justifiable inferences are to be drawn in his favor." Liberty Lobby, 477 U.S.
at 255; see also Mastro v. PEPCO, 447 F.3d 843, 850 (D.C. Cir. 2006); Aka v. Washington
Hospital Center, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (*en banc*).  The Court must "eschew
making credibility determinations or weighing the evidence." Czekalski v. Peters, 475 F.3d 360,
363 (D.C. Cir. 2007).  The non-moving party's opposition, however, must consist of more than
mere unsupported allegations or denials and must be supported by affidavits, declarations, or
other competent evidence, setting forth specific facts showing that there is a genuine issue for
trial.  See Fed. R. Civ. P. 56(e); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  The non-
movant, in other words, is required to provide evidence that would permit a reasonable jury to
find in his favor.  See Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987).

**III.    Analysis**

Title VII protects federal employees from discrimination because of race and from
retaliation for reporting discrimination.  See 42 U.S.C. § 2000e-16(a) (discrimination); id.
§ 2000e-3(a) (retaliation).  Although the precise standards differ, an employee seeking to make
out either a discrimination or retaliation claim must establish two elements: (1) he suffered an
adverse action, (2) either because of a protected characteristic or in retaliation for reporting
discrimination.  Baloch v. Kempthorne, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (discrimination);
id. at 1198 (retaliation).  Leach raises both discrimination and retaliation challenges (Counts I
and III), and he also contends that he was subjected to a discriminatory and retaliatory hostile
work environment (Counts II and IV).

The Court's analysis proceeds in three parts.  First, it determines which of the smorgasbord of agency activities Leach identifies qualify as an adverse action within the meaning of Title VII's discrimination and retaliation provisions.  Second, with respect to qualifying adverse actions, the Court considers whether Leach has produced any evidence that would allow a reasonable jury to find those actions discriminatory or retaliatory.  Finally, the Court takes up his hostile-work-environment contentions.

A.  <u>Adverse Employment Actions</u>

Plaintiff identifies a large assortment of putative adverse actions on which he seeks to base his claims.  <u>See</u> Compl., ¶¶ 82(a)–(h) (discrimination), 72(a)–(h) (retaliation).  They are: (1) the initial administrative investigation into Leach, <u>id.</u>, ¶¶ 72(a), 82(a); (2) the removal of his supervisory duties during the investigation, <u>id.</u>, ¶¶ 72(b), 82(b); (3) the referral of the matter to OIG for its consideration, <u>id.</u>, ¶¶ 72(a), 82(a); (4) O'Connor and Bailey's conduct during that OIG investigation, <u>id.</u>, ¶¶ 72(a), 82(a); (5) the Notice of Proposed Suspension, which recommended a 5-day suspension without pay, <u>id.</u>, ¶¶ 72(f), 82(f); (6) the Suspension Decision, which suspended Leach for two days without pay and revoked his ability to telework, <u>id.</u>, ¶¶ 72(f)–(h), 82(f)–(h); (7) the decision to detail him to a nonsupervisory role in the Information Technology Directorate, <u>id.</u>, ¶¶ 72(g), 82(g); (8) the creation of a new Assistant Deputy Chief position, <u>id.</u>, ¶¶ 72(c), 82(c); and (9) Leach's non-selection for that position.  <u>Id.</u>, ¶¶ 72(e), 82(e).  The Court considers first which of these actions may form the basis for a discrimination claim and then (because the standards differ) which may underlie a retaliation claim.

1. *Discrimination*

Last year, in <u>Chambers v. District of Columbia</u>, 35 F.4th 870 (D.C. Cir. 2022), the *en banc* D.C. Circuit held that Title VII's adverse-action requirement obligates a plaintiff to show

only that he was discriminated against with respect to his "terms, conditions, or privileges of employment." Id. at 874–75 (quoting 42 U.S.C. § 2000e–2(a)(1)). Chambers thus overruled Brown v. Brody, 199 F.3d 446 (D.C. Cir. 1999), which had required that the challenged adverse action also carry "objectively tangible harm." Brown, 199 F.3d at 457. Under the "objectively tangible harm" test, a plaintiff who "suffers no diminution in pay or benefits does not suffer an actionable injury unless there are some other materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities." Id. Brown had accordingly held that denial of a job transfer was not actionable discrimination.

In Chambers, the Circuit did away with that objectively-tangible-harm requirement for discrimination claims. See 35 F.4th at 874–75. It held that an employer does discriminate in violation of Title VII when it denies a job transfer because of a protected characteristic. Id. In so holding, Chambers broadened the range of actions that can form the basis for a discrimination claim.

Here, Plaintiff argues that all nine of the actions listed above qualify as adverse for Title VII discrimination purposes. Many of them — including Leach's removal of duties, suspension, transfer, and non-selection — clearly do. Id. Others are much closer. In particular, it is not self-evident (even post-Chambers) that the OIG referral and proposed suspension themselves altered Leach's "terms, conditions, or privileges of employment." Id. at 874 (noting that "not everything that happens at the workplace affects an employee's 'terms, conditions, or privileges of employment'"); see also Bain v. Off. of Att'y Gen., No. 21-1751, 2022 WL 17904236, at *23 (D.D.C. 2022) (describing interpretation of that phrase as a "novel and important question . . . in a post-Chambers world"). But because the Court holds below that Plaintiff fails to identify any evidence that any of these actions were taken because of his race, it believes that the most

13

prudent course is to assume without deciding that all of these actions qualify as adverse actions for discrimination purposes under Chambers.

2. *Retaliation*

Title VII's retaliation standard, however, is a different story. That is because the Circuit in Chambers limited its holding to discrimination claims and left the existing "materially adverse action" standard in place for retaliation claims. See 35 F.4th at 876 (explaining this result as justified by "fundamental differences between the antidiscrimination and antiretaliation provisions"). "To prove retaliation, the plaintiff generally must establish that he or she suffered (i) a materially adverse action (ii) because he or she had brought or threatened to bring a discrimination claim." Baloch, 550 F.3d at 1198. A "materially adverse action" is one that, objectively speaking, would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." Id. at 1198, 1199 n.5 (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006)). It "[t]ypically . . . involves 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'" Bridgeforth v. Jewell, 721 F.3d 661, 663 (D.C. Cir. 2013) (quoting Taylor v. Small, 350 F.3d 1286, 1293 (D.C. Cir. 2003)). It conversely does not reach every "[m]inor . . . employment action[] that an irritable, chip-on-the-shoulder employee did not like." Id. (quoting Russell v. Principi, 257 F.3d 815, 818 (D.C. Cir. 2001)). While the retaliation standard historically "encompass[ed] a broader sweep of actions" than the discrimination standard did, see Baloch, 550 F.3d at 1198 n.4, the opposite is thus true after Chambers.

Two types of employment actions bear particular mention in this case. First, the D.C. Circuit has made clear that proposed suspensions, as opposed to actual suspensions themselves,

14

are not materially adverse for retaliation purposes.  See Baloch, 550 F.3d at 1199 (holding that "proposed 2-day and 30-day suspensions" were not materially adverse actions (emphasis omitted)).  Second, courts in our district have held that referrals to inspectors general are typically not actionable.  In Moore v. United States Department of State, 351 F. Supp. 3d 76 (D.D.C. 2019), for example, Judge Dabney Friedrich held that a State Department employee could not rest a Title VII retaliation claim on another employee's recommendation that the Office of Inspector General investigate the plaintiff, concluding that "the request for an investigation by an independent body (as opposed to the disciplinary action that may follow) does not constitute an actionable adverse employment action . . . ."  Id. at 95 (quoting Ware v. Billington, 344 F. Supp. 2d 63, 76 (D.D.C. 2004)).  Ware v. Billington, the case on which Moore relied, held just the same: that "although the discipline imposed as a result of an investigation may have a sufficiently adverse effect on plaintiff's employment to be actionable, the mere initiation of the investigation does not."  344 F. Supp. 2d at 76.

The only exception comes where initiation of that OIG investigation itself triggers other legal consequences.  For example, in King v. Holder, 77 F. Supp. 3d 146 (D.D.C. 2015), Judge Colleen Kollar-Kotelly held that an OIG investigation could qualify as an adverse employment action where the plaintiff alleged that initiation of that investigation delayed an otherwise automatic promotion.  Id. at 151–52; see also Moore, 351 F. Supp. 3d at 95 (noting plaintiff "does not allege any disciplinary or other employment action resulting from the investigation").  Unless a plaintiff alleges that an OIG investigation itself works materially adverse consequences, then, the mere initiation of (or request for) one cannot qualify as a basis for a Title VII retaliation claim.

15

Here, many of Leach's alleged actions do count as materially adverse for purposes of retaliation. It is clear, however, for the reasons just explained, that neither his proposed suspension nor his referral to OIG counts. No consequences flowed from the investigation itself: Bailey removed Leach from his supervisory duties on January 9, prior to O'Connor's referring the matter to OIG on January 17. See SUMF, ¶¶ 25–26, 35–36. And Plaintiff's subsequent suspension resulted from different, later actions — namely, the Notice of Proposed Suspension and the Suspension Decision. Id., ¶¶ 41–42. Leach thus identifies no basis on which the Court can view the OIG referral as a materially adverse action capable of sustaining a retaliation claim. See also Ware, 344 F. Supp. 2d at 76 ("[A]lthough the discipline imposed as a result of an investigation may have a sufficiently adverse effect on plaintiff's employment to be actionable, the mere initiation of the investigation does not.").

\* \* \*

The Court now considers whether Plaintiff has raised a jury question of discrimination based on any of the nine actions and of retaliation based on all but his referral to OIG and his proposed suspension.

B. Discrete Discriminatory or Retaliatory Acts

The Supreme Court established the three-part burden-shifting framework that governs traditional claims of employment discrimination and retaliation in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination or retaliation. When he "meets this burden, '[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason' for its action. If the employer succeeds, then the plaintiff must 'be afforded a fair opportunity to show that [the employer's] stated reason . . . was in fact pretext' for unlawful

16

discrimination." Chappell-Johnson v. Powell, 440 F.3d 484, 487 (D.C. Cir. 2006) (quoting McDonnell Douglas, 411 U.S. at 802, 804) (internal citations omitted).

When, however, "an employee has suffered an adverse employment action and an employer has asserted a legitimate, non-discriminatory reason for the decision, the district court need not — and should not — decide whether the plaintiff actually made out a *prima facie* case under McDonnell Douglas." Brady v. Off. of Sergeant at Arms, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis omitted). The court's task in such cases is to "resolve one central question: Has the employee produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin?" Id. The "relevant inquiry" is thus whether an employee has "produced sufficient evidence for a reasonable jury to conclude that the [defendant's] asserted nondiscriminatory reason for firing h[im] was not the actual reason, and that instead the [defendant] was intentionally discriminating . . . ." Wheeler v. Georgetown Univ. Hosp., 812 F.3d 1109, 1114 (D.C. Cir. 2016). This analysis "appl[ies] equally to retaliation claims." Jones v. Bernanke, 557 F.3d 670, 678 (D.C. Cir. 2009).

The Court considers the nine alleged actions in turn, grouping them where appropriate.

### 1.  *Administrative Investigation and Interim Removal of Duties*

Leach first contends that the decisions to launch an administrative investigation and to temporarily remove his duties during its pendency were discriminatory and retaliatory. This argument does not get off the ground because the Mint has offered non-discriminatory reasons for the decisions and Leach has produced no evidence that would allow a reasonable jury to find those reasons pretextual.

17

Begin with Bailey and O'Connor's legitimate reasons to investigate Medina's email and suspend Leach's supervisory duties in the interim. That email alleged "constant condescending and verbally abusive behavior" over a period of eighteen months. See Medina Email. That is an objectively troubling email for any manager to receive. All the more so because Medina had complained before about Leach's treatment and because many employees had previously raised similar concerns about Plaintiff. See SUMF, ¶¶ 7–19. The referring officials thus had a legitimate basis for believing that the matter warranted an administrative investigation. See Brady, 520 F.3d at 496. Similarly, Bailey offered legitimate reasons for removing Leach's supervisory duties during the investigation's pendency. As Bailey described, given the "serious nature of the allegations," it made sense to temporarily bar Leach from directly managing others while the investigation proceeded. See Bailey Decl., ¶¶ 15–16; SUMF, ¶¶ 25–26. That reasoning is facially legitimate.

Leach identifies no record evidence to suggest that these reasons were pretext for discrimination or retaliation. Beginning with discrimination, Leach has shown nothing that indicates racial animus played any role in the decision to investigate him. See ECF No. 71 (Reply) at 1 (highlighting that Leach's Opposition "focuses principally on his retaliation claims" because "Leach fails to identify any record evidence, or even to make any coherent allegation, of race discrimination by Deputy Chief Bill Bailey (who is the same race as Leach), Chief Dennis O'Connor or any of the other management officials that he identifies"). And regarding retaliation, Leach had not filed his January 11 EEO complaint at the time that Bailey and O'Connor decided to investigate him and suspend his duties, a decision they communicated to him on January 9. See SUMF, ¶¶ 25–26; Bailey Decl., ¶ 16. The only possible basis for retaliation would be Leach's 2016 EEO complaint, which named neither Bailey nor O'Connor

18

and which concerned a matter on which those two superiors actually took <u>his</u> side.  <u>See</u> SUMF, ¶ 30.  Leach also does not argue that either Motl or Gentry influenced this initial action on January 9, 2017, nor is there any evidence to that effect.

His central position regarding these actions is that Bailey "admitted in his deposition that he did not believe the allegations in Medina's email."  Pl. SUMF Resp., ¶¶ 20, 23, 24.  This, however, relies on a flagrant mischaracterization of Bailey's deposition testimony.  There, Bailey testified only that he believed the allegations in Medina's email were serious, but that he had not prejudged them or formed an opinion on their veracity before the investigation.  <u>See</u> Bailey Depo. at 123–24; <u>id.</u> at 115–17.  Bailey elsewhere specifically emphasized that he felt the allegations were serious.  <u>Id.</u> at 72–74.  Distorting one snippet of deposition testimony does not create a genuine fact dispute.

Summary judgment is thus warranted on the proposed initial administrative investigation and the interim removal of Leach's managerial duties.

2. *OIG Referral*

Leach next argues that O'Connor's January 17, 2017, decision to refer him to OIG was discriminatory and retaliatory.  <u>See</u> Referral Letter; O'Connor Decl., ¶ 9; SUMF, ¶ 32.  Because the Court held above that the OIG referral was not a materially adverse action for retaliation purposes, it will consider only whether it was discriminatory.

The same facially legitimate reasons that justified the initial administrative investigation also justified referring the matter to OIG.  Again, the email's allegations were serious and troubling, and it was well within reason for O'Connor to recommend an independent investigation.  O'Connor's declaration explains that he based his referral decision on "the seriousness of the allegations, Mr. Leach's senior level, supervisory, and sensitive position

19

within the Protection Directorate, as well as [O'Connor's] general knowledge of the past complaints against Mr. Leach." O'Connor Decl., ¶ 8; see also SUMF, ¶ 31. That explanation is plainly legitimate.

In response, Plaintiff does not identify a material dispute regarding whether that explanation was a pretext for race discrimination. His entire argument is that "O'Connor made [the referral] because of the Plaintiff's prior EEO complaint," not because of his race. See Pl. SUMF Resp., ¶ 31. Leach contends in particular that Motl and Gentry wanted to retaliate against him because of his prior EEO activity, and that those two officials influenced O'Connor's referral to the Inspector General. Id. As explained above, however, retaliation is out. Leach thus must produce sufficient evidence for a reasonable jury to conclude that discrimination was the actual reason for his firing. See, e.g, Wheeler, 812 F.3d at 1114. Because he cannot do so, summary judgment is warranted here as well.

Leach adds that Bailey and O'Connor's conduct during the OIG investigation constituted a separate adverse action because they "only gave the investigator negative materials about the Plaintiff, withholding the incredibly positive record of outstanding performance appraisals the Plaintiff had achieved in the last decade." Pl. SUMF Resp., ¶ 34. This factual proposition finds no support in the record. Bailey responded to questions from the investigator, who sought to learn more about the allegations against Leach — not to generally assess his performance in the position. See generally Bailey Depo.; O'Connor Depo.; Reply at 14–15. Indeed, O'Connor specifically considered Leach's performance history alongside the OIG report in imposing discipline. See Suspension Decision at 7. Leach has thus not provided evidence in support of this claim, much less some that would suggest that any misstatements would have been because of discrimination or retaliation.

20

3. *Suspension and Telework*

Leach fares no better on his argument that the proposed five-day suspension was discriminatory, or that the ultimate two-day suspension (which also revoked his ability to telework) was discriminatory or retaliatory. As before, the Mint offered legitimate reasons for all of these actions. Bailey's five-page Notice of Proposed Suspension analyzed the OIG report and offered reasoned conclusions for recommending a suspension. See generally Notice of Proposed Suspension. O'Connor's nine-page Notice of Suspension Decision in turn "carefully reviewed and considered" Bailey's Notice, as well as Leach's responses to that proposal. See Suspension Decision at 2. It walked charge by charge through OIG's findings, the evidence supporting them, and Leach's responses to each. See generally Suspension Decision; see also SUMF, ¶ 42; O'Connor Decl., ¶ 16. It also specifically considered Leach's prior performance ratings alongside other exacerbating and mitigating factors. See Suspension Decision at 7. O'Connor's memorandum ultimately "agree[d] with the TOIG's finding that [Leach] subjected Arnaldo Medina to condescending and verbally abusive behavior," but decided a two-day suspension was sufficient. Id. at 2, 7–8. And, as the memorandum explained, under the Mint's general telework policy, this misconduct finding automatically revoked Leach's teleworking privileges. Id. at 9. Those decisions were supported by facially legitimate reasoning.

Leach has adduced no evidence that these actions were motivated by discriminatory or retaliatory intent. He asserts only that "the findings of the OIG report were engineered by Bailey with information that Bailey knew were [*sic*] not true" because "Bailey withheld anything positive about the Plaintiff for example his decade long record of outstanding appraisals and achievements." Pl. SUMF Resp., ¶¶ 40–43. As discussed above, however, Leach identifies no evidence that Bailey knowingly provided false information to OIG or "withheld" anything

21

relevant from the investigation. And even though Plaintiff's past performance reviews were not central to the issues at hand, O'Connor's decision still specifically considered them in its analysis. See Suspension Decision at 7. Leach also cannot claim that Motl or Gentry infected the final investigative report or any decisions that resulted from it, as they "w[ere] in no way involved in the investigation of [his] alleged misconduct." Hampton v. Vilsack, 685 F.3d 1096, 1101 (D.C. Cir. 2012). In any event, both Bailey and O'Connor conducted their own "independent review[s] of the evidence" before issuing their respective Notice of Proposed Removal and final removal decision. Id. Leach thus has shown no material dispute on this point either.

### 4. *ITD Detail and Reassignment*

Next is Leach's challenge to his ITD detail and his subsequent reassignment to a non-supervisory role. The Mint offered sound justifications for these decisions as well. Based on the OIG report's findings, Bailey reasonably determined that Leach "could no longer be trusted with supervisory authority." Bailey Decl., ¶ 21. He thus worked with ITD staff to arrange for Plaintiff to be detailed there. Following that detail, Leach was then transferred back to the Protection Directorate in a non-supervisory role. See SUMF, ¶¶ 43–46. Again, in light of the serious allegations against him and his supervisors' well-explained suspension decision, this all was facially legitimate. See also Def. Resp. to Pl. SUMF, ¶ 14 (explaining how "the detail was appropriate in light of the Inspector General findings and further was meant to utilize Plaintiff's extensive training in that [information technology] field").

Leach counters that Bailey "did not put the Plaintiff back in his position because he was never planning to," that the OIG investigation "was a pretext for the discrimination the Plaintiff faced because of his protected EEO activity," and that his supervisors skewed the OIG report in

22

the ways discussed above. See Pl. SUMF Resp., ¶ 43. These conclusory allegations find no support in the record and do not create a material dispute of fact sufficient to survive summary judgment.

5. *Assistant Police Chief Creation and Non-Selection*

Last up are Leach's contentions regarding the creation of an Assistant Police Chief role and his non-selection for that role, arguments that meet the same fate as the rest. To begin, O'Connor reasonably explained why he wanted to create the role, see ADC Approval at 1; see also O'Connor Decl., ¶ 17, and the Department authorized it in a six-page memorandum that documented why the position was "essential to strengthen the necessary oversight of the [Mint's] law enforcement and security functions." ADC Approval at 2; see generally id. at 1–6. The agency also has a sound explanation for its decision not to hire Leach: the three-member interview panel, with which Leach has no objection, gave him the lowest score based on their perception that his answers were incomplete and that he refused to answer some questions. See Wynn Decl. at 5–6; SUMF, ¶ 50.

Plaintiff offers no evidence that these agency actions were discriminatory or retaliatory. His only argument regarding the position's creation is that "Chief O'Connor and Deputy Chief Bailey worked with higher up officials to create the position and hire who they wanted for it." Pl. SUMF Resp., ¶¶ 49, 50, 52, 53. But Leach provides no evidence to allow for any inference that either O'Connor or Bailey had a discriminatory or retaliatory motive when they sought and received departmental approval for that position. Regarding his non-selection, Plaintiff does not challenge the panel's decision to award him the lowest score; he offers only the conclusory assertion that answering the panel's questions would have been "futile." Id., ¶ 52. With the agency's facially legitimate explanation undisturbed by any contrary facts, the Court sees no way

23

a jury could find the agency discriminated against Leach in not hiring him to this position. Cf. Fischbach v. D.C. Dep't of Corr., 86 F.3d 1180, 1183 (D.C. Cir. 1996) ("Short of finding that the employer's stated reason was indeed a pretext, however — and here one must beware of using 20/20 hindsight — the court must respect the employer's unfettered discretion to choose among qualified candidates.").

Leach, consequently, has identified no evidence that could support a jury verdict of retaliation or discrimination, and so the Court will grant Defendant's Motion with respect to those counts.

C. Hostile Work Environment

The Court concludes with Leach's final claim under Title VII, in which he alleges that the same acts described above also created a hostile work environment. "The bar for demonstrating a hostile work environment is a high one: A plaintiff must show that his employer subjected him to discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Achagzai v. Broad. Bd. of Governors, 170 F. Supp. 3d 164, 183 (D.D.C. 2016) (citation omitted and formatting modified); see also Ayissi-Etoh v. Fannie Mae, 712 F.3d 572, 577 (D.C. Cir. 2013). In evaluating a hostile-environment claim, the Court "looks to the totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." Baloch, 550 F.3d at 1201 (citing Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998)). By adhering to these standards, the Court thereby "ensure[s] that [employment-discrimination law] does not become a general civility code" that involves courts in policing "the ordinary tribulations of the workplace." Faragher, 524 U.S. at 788 (citations and internal quotation marks omitted). While a

24

plaintiff need not prove a hostile work environment at this stage, he still must produce facts sufficient to allow a jury to find "extreme" conduct that satisfies the "demanding" standard for such a claim.  Id.

Leach has not met the high bar required.  At most, he points to "work-related actions by supervisors" that "courts typically do not find . . . to be sufficient for a hostile work environment claim."  Munro v. LaHood, 839 F. Supp. 2d 354, 366 (D.D.C. 2012) (citation omitted); see also Bell v. Gonzales, 398 F. Supp. 2d 78, 92 (D.D.C. 2005) ("Occasional instances of less favorable treatment involving ordinary daily workplace decisions are not sufficient to establish a hostile work environment.").  These actions do not rise to the level of conduct that is "sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment."  Harris, 510 U.S. at 21 (citation omitted); see, e.g., Nurriddin v. Bolden, 674 F. Supp. 2d 64, 94 (D.D.C. 2009) (dismissing hostile-work-environment claim where allegations of "disparaging remarks, criticisms of [plaintiff's] work, and other negative comments d[id] not sufficiently demonstrate a significant level of offensiveness"); id. ("Nor can the removal of important assignments, lowered performance evaluations, and close scrutiny of assignments by management be characterized as sufficiently intimidating or offensive in an ordinary workplace context.") (citations omitted).  Finally, Leach offers only conclusory allegations that these actions had anything to do with his membership in a protected class or his EEO complaints.  The Court will thus grant Defendant's Motion with respect to Leach's remaining counts as well.

\*    \*    \*

The through-line beneath Leach's arguments is that there were positive attributes to his performance and that it was not his fault that others found him to be a difficult colleague.  But the Court lacks authority to "second-guess an employer's personnel decision absent

25

demonstrably discriminatory motive." Waterhouse v. D.C., 298 F.3d 989, 995 (D.C. Cir. 2002)

(quoting Fischbach, 86 F.3d at 1182). Plaintiff has offered no grounds for a rational juror to

conclude that the reason he was investigated, suspended, and passed over for promotion was

racial discrimination or retaliation, rather than a years-long string of workplace-conduct issues.

Summary judgment is thus the proper end to this tale.

## IV.    Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion for Summary

Judgment. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: March 14, 2023

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

LESTER A. LEACH,

      Plaintiff,

         v.

JANET YELLEN, Secretary, United States
Department of the Treasury,

      Defendant.

Civil Action No. 18-3075 (JEB)

## ORDER

      For the reasons set forth in the accompanying Memorandum Opinion, the Court

ORDERS that:

    1.  Defendant's [48] Motion for Summary Judgment is GRANTED; and

    2.  Judgment is ENTERED in favor of Defendant.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  March 14, 2023

1